No. 2,238.

JAS. F. STUART, PETITIONER, *v.* H. H. HAIGHT, Governor of the State, RESPONDENT.

STATE PUBLIC LAND LAW.—STATUTE OF 1868.—When the location of a State Land Warrant cannot be made available, in consequence of the prior claims of persons holding pre-emption rights upon the lands located, the owner of the warrants will be entitled to duplicate land warrants, in accordance with the provisions of the Act of 1868, "to provide for the management and sale of the lands belonging to the State."

IDEM.—REGISTER OF THE STATE LAND OFFICE.—In awarding a certificate upon a located land warrant, the Register of the State Land Office does not exceed his authority, under the 59th Section of the Act of 1868, if he is satisfied the location made is ineffectual or useless, and that the lands located would not, by reason of such location, be lost to the State.

IDEM.—The determination and judgment of the Register upon these matters, are not the subject of review either by the Executive or the Courts.

THIS was an application to the Supreme Court, in the exercise of its original jurisdiction, for a mandamus to the respondent, as Governor of the State.

The case is stated in the opinion.

*James F. Stuart,* in *pro. per.* for Petitioner.

*Jo Hamilton,* Attorney General, for Respondent.

In support of his demurrer, the Attorney General referred to the following authorities : Art. 5401, Sec. 467, Pr. Act; Hittell's Digest, Vol. II, p. 777 ; *McDougal* v. *Bell* (4 Cal. 177) ; *Williams* v. *Smith* (6 *Id.* 91) ; *Draper* v. *Noteware* (7 Cal. 276) ; *Goodwin* v. *Glazer* (10 Cal. 333) ; *People* v. *Board of Supervisors of San Francisco* (28 Cal. 429) ; *Middleton* v. *Low* (30 Cal. 596.)

WALLACE, J., delivered the opinion of the Court :

This is an application made directly to this Court, in the exercise of its original jurisdiction, for a peremptory mandamus, to be directed to the defendant in his official capacity,

requiring him to prepare and deliver to the plaintiff a dupli-
cate land warrant, to bear the same number as original Land
Warrant No. 132.

There is no dispute about the facts; they appear by stipu-
lation and upon the face of the complaint, to which the
defendant, by the Attorney General, has interposed a gen-
eral demurrer.

Original Warrant No. 132 was formerly the property of
one Quintana, who, in 1860, caused it to be located upon
certain lands, then supposed to be subject to such location,
and it was thereupon returned into the office of the Register
of the State Land Office cancelled, and has ever since re-
mained on file in that office.

The plaintiff has, since that time, succeeded to all the
rights of Quintana in the warrant and in the location itself.
It subsequently turned out, however, that the location was
defeated by the prior claims of certain persons holding pre-
emption rights upon the same premises.

Under these circumstances the plaintiff obtained from the
Register of the State Land Office a certificate of the fact
that he is the owner of the original warrant; that it had been
located, and that the location had become unavailable on
account of the pre-emption claims, and that the warrant
itself was then on file in his office, cancelled. A further cer-
tificate, of the same officer, showed that of the three hundred
and twenty acres covered by the location, two hundred and
forty had been actually lost to the locator by reason of the
pre-emptions, and that no part of the entire three hundred
and twenty acres had been charged to the State by the Fed-
eral Government as a portion of the five hundred thousand
acres, to which the State was originally entitled.

These certificates were presented to the defendant as Gov-
ernor, and he was requested to prepare and deliver to the
plaintiff a duplicate warrant, in accordance with the provi-
sions of "An Act to provide for the management and sale of
the lands belonging to the State," approved March 28, 1868.
(Stats. 1867–8, p. 507.) This the defendant refused to do,
and placed his refusal upon the ground that the provisions

of that Act had no applicability to warrants, which had been once, in fact, located.

Section 59 of the Act referred to is in the following words:

"SECTION 59. Any person making application for a duplicate school land warrant in lieu of one alleged to have been lost or destroyed, shall make satisfactory proof, by affidavit of himself or others, to the Register of the State Land Office, that the party applying therefor is the *bona fide* owner of such warrant; that the same has not been located, and of the facts establishing the loss or destruction of the same, and shall file with the Register of the State Land Office a good and sufficient bond in form, joint and several, with two or more sureties, to be approved by said Register, payable to the State of California, in double the value of said school land warrant, conditioned that the said warrant alleged to have been lost or destroyed, shall not be presented for location; and in any case, where, for want of a proper acknowledgment of an assignment of the original or partial destruction or defacement thereof, or for any other cause, it cannot be made available, the applicant shall make affidavit that he is the owner of the warrant, together with affidavit of any other person or persons to the satisfaction of the Register, showing the fact of the assignment, and that such warrant has not been located, and shall file the original warrant for cancellation with the Register of the State Land Office. The said Register shall certify that the applicant is entitled to a duplicate school land warrant in lieu of the one proven to have been lost or destroyed, or presented for cancellation, and upon presentation of such certificate to the Governor, he shall prepare and deliver to the said applicant a duplicate warrant, bearing the same number as the original warrant, having the word 'duplicate' written across the face thereof, which said warrant, when so issued, shall be of the same validity and have the same force and effect as the original. The Register of the State Land Office shall in no case give the certificate above required until he shall be satisfied that the original has not been located, or, if located, that the lands so located have not been, and will not be, charged to this State by the Federal Government as a portion of the five hundred thousand acres of land granted to this State for internal improvements."

The design evidently had in view in the enactment of the statute was to provide for the relief of those who had pur-

chased State Land Warrants, which, in some way, had become unavailable to them for the purposes for which they had been issued by the State. The intention was to relieve from loss the holder of the warrant, which had been issued by the State, and acquired by the purchaser in the expectation of being able to locate it on the lands which had been granted to her. Hence, the statute proceeds to relieve against the cases and conditions in which that loss had usually occurred; it provided for warrants alleged to have been lost or wholly destroyed, and in such cases exacted a bond conditioned against their subsequent appearance; for cases in which there had been a partial destruction, or a defacement, or in which the certificate of acknowledgment of its assignment should prove insufficient in point of form; and in all the latter cases it required no bond, but exacted the better security afforded by a surrender and cancellation of the original warrant; then, going beyond this specific enumeration, it proceeds to provide relief in "any case, where * * * for any other cause," the original warrant "cannot be made available" to the holder.

An examination of the language of Section 59 (omitting the last clause of that section), shows that it was not, at first, the intention of the Legislature to afford any relief whatever, in any case, in which the original warrant had been located; hence, the fact of its non-location was carefully required to be shown by affidavit, as an indispensable condition to obtaining the benefit of the provisions of the Act itself.

But the last clause of that section shows, in our opinion, a partial abandonment of this view; for it, in effect, provides that though the original warrant may have been located, the certificate may, nevertheless, be granted to its holder, in case the Register shall be satisfied, that the lands included in the location have not become thereby lost to the State.

It is our duty, of course, to endeavor, by all proper means, to ascertain what was, in fact, the legislative will, however obscurely it may have found utterance in the language employed, and for this purpose we must, if possible, attribute some significance to each clause of the statute, when read in

connection with its other provisions, and we cannot see what effect can be ascribed to the last clause, unless it operate as a qualification of the therefore absolute purpose of the Legislature to exclude the holders of located warrants from the benefit of the Act.

It does not appear to us, therefore, that in awarding this certificate upon a located warrant, the Register necessarily exceeded the somewhat discretional authority which the statute vested in him; it being within the general scope of his powers, and the *bona fides* of his action in the premises not being called in question here; every fair intendment should be indulged in support of the certificate, as the official act of the chief officer of the Land Department of the State Government; and upon this principle, since the Register is expressly forbidden by the statute to issue such a certificate as this, unless he should be first satisfied that the lands which had been located would not, by reason of such location, be lost to the State, the award of the certificate in the case, necessarily imports that he was satisfied of that fact.

The certificate being sufficient in form and substance, and such as the Register might lawfully issue, the statute declares, in mandatory terms, that upon its presentation by the applicant, the Governor "shall prepare and deliver to said applicant a duplicate warrant," etc.

We think that it results not only from the mandatory character of the language which the Act employs, but also from the nature of the duty required of him, that the Governor has no discretion to refuse its performance; for, under the express provisions of the statute, the necessary investigation of the alleged facts upon which the duplicate land warrant is claimed, the deducing from that investigation of a belief of their truth and sufficiency under the circumstances appearing; the exaction from the applicant of proper security against loss by the State; and, in the case at bar, the formation of an opinion, or judgment, as to the probability of the Federal Government subsequently deducting the located land from the quantity of lands to which the State would otherwise be entitled; in fine, the determination

as to whether or not, and under what conditions the dupli-cate warrant ought to be issued in the given case, are duties which respectively belong to the Register, and his determination and judgment upon those matters are not the subject of review either by the Executive or the Courts.

We think that the writ should issue as prayed for, and it is so ordered.

By SPRAGUE, J.: I concur in the judgment.