[Civ. No. 1058.  First Appellate District.—December 22, 1911.]

## THOMAS G. CONN, Respondent, v. THE CITY COUNCIL OF THE CITY OF RICHMOND, Appellant.

MUNICIPAL CHARTER—RECALL OF MEMBERS OF CITY COUNCIL—PROPER CERTIFICATE—REFUSAL OF CITY COUNCIL TO ACT—MANDAMUS—PETITION BY ELECTOR.—Where, under a municipal charter providing for the recall of elective officers, petitions for the recall of six members of the city council signed by the requisite number of qualified electors were certified by the city clerk, and there was no evidence to the contrary, it became the official duty of the city council to fix a date for such recall election, and where, through the machinations of its members desired to be recalled, the council refused to act, the superior court, upon the petition of one of the qualified electors, who is also a taxpayer, properly issued its writ of mandate to compel the city council to fix the date of such election.

ID.—INTEREST OF QUALIFIED ELECTOR IN ENFORCEMENT OF LAW.—Presumptively, every elector of a municipality is beneficially interested

17 Cal. App.—45

in the manner in which the governmental affairs of the municipality are being administered by the representatives of the people; and when the purpose of a writ of mandate is to compel the performance of a public duty not due to the government as such, it need not appear that the interest of the petitioner, if he be a qualified elector, is in any way different from that of the balance of the community. It is the right and duty of every citizen to insist upon the prompt and proper performance of official duty which affects the public generally; and it is enough that the petitioner for the writ of mandate is a qualified elector of the municipality, and as such interested in having the law enforced.

Id.—CHARTER OF CITY NOT REQUIRING DETAILED STATEMENT OF CHARGES. The charter of the city does not require or contemplate that recall petitions should be drawn with regard to the technical niceties and refinements of the rules of the law which pertain to the preparation of pleadings in civil and criminal cases, or should state a cause of action in that regard by a detailed statement of charges. The purpose of the charter in providing for a recall election° is to give the people of the municipality the right to cut short the official term of every elected officer whose conduct is, for any cause, unsatisfactory or distasteful to the body of the community, and it only requires them to state generally their grounds for removal, so as to raise a political and not a legal issue.

Id.—PROVINCE OF ELECTORS TO PASS UPON GROUNDS FOR REMOVAL.— Where the people of the city by their charter reserved to themselves the right to remove a public officer by the same process, and in the exercise of the same discretion, which elected him, it is clearly the province and privilege of the people at the polls, rather than the province of the courts, to pass upon the sufficiency of the grounds stated for the removal of an elected officer by the method of a recall election.

Id.—LIBERAL CONSTRUCTION OF CITY CHARTER—FORM OF RECALL PETITIONS AND SIGNATURES.—The provisions of the city charter as to the mere form of the recall petition or of the signatures thereto are not to receive such a narrow construction as would render it practically impossible to invoke a recall election in the city; but, like those of any other statute, they are to be liberally construed with a view to promoting the purpose for which they were enacted. So construed, though some of the signatures were by initials rather than their full names, and some of them gave street corners instead of the street and number of their address, it is held that all that the charter requires of the city clerk is to determine their identity, as appearing upon the register, and that the designations so given substantially complied with the charter.

Id.—GENUINENESS OF SIGNATURES—PRESUMPTION.—By the provisions of the charter, the recall petition upon its presentation is presumed to be genuine as to each signature thereto, if not called in question

by the sworn affidavit of the alleged owner thereof. This presumption should control both the city clerk and the city council, where no question is made before either of them as to such genuineness.

ID.—PRESUMPTION AS TO REQUISITE NUMBER OF QUALIFIED ELECTORS.— The charter also provides that "unless and until it be proven otherwise by official investigation, it shall be presumed that the petition presented contains the signatures of the requisite number of qualified electors"; this presumption is also controlling in the absence of such official investigation.

ID.—CONCLUSIVENESS OF DECISION OF CITY CLERK AS TO GENUINENESS AND NUMBER OF QUALIFIED ELECTORS—DISSENT.—The opinion is expressed by the appellate court that in so far as the number and genuineness of the signatures of electors entitled to vote are concerned, the city clerk alone by the provisions of the charter is empowered to pass upon and determine the sufficiency of every recall petition filed with him, and that in these two particulars his finding and certificate are conclusive. (The opinion as to such conclusiveness is disapproved of by the court in bank on petition for rehearing and held not essential to the decision, since there is no controversy as to the accuracy of the clerk's certificate calling for such opinion.)

ID.—SUFFICIENCY OF PETITIONS NOT CONTROVERTED—MANDATORY DUTY OF CITY COUNCIL TO CALL ELECTION.—Since it appears that, in the case at bar, the petitions did, upon their face, in form and substance, conform to the spirit and letter of the charter, and that there was no controversy before the city council or elsewhere as to the sufficiency of such petitions, which were certified to them by the city clerk, their duty in the premises, under the charter, was ministerial and mandatory to "thereupon order and fix a date for the holding of said election," and *mandamus* will lie to compel them to perform such duty.

ID.—EXPIRATION OF TIME FOR ELECTION BEFORE APPLICATION FOR WRIT OF MANDATE—DEFEAT BY OFFICERS CHARGED WITH DUTY.—Though ordinarily a writ of mandate will not issue to compel the performance of an official act if, when the writ is applied for, the time limited by law for the action has expired, yet this rule does not apply in a case like the one at bar, where the requirements of the law have been disregarded and defeated, of their own volition, by the very officers intrusted with the performance of a public duty which was clearly obligatory.

ID.—RECALL PROVISIONS UNDER MUNICIPAL CHARTER VALID—"MUNICIPAL AFFAIRS."—There is no provision of the constitution of the state violated by the recall under a city charter of an elected city officer. The tenure of municipal officers and the mode of removing an elected city official are purely "municipal affairs," as to which the provisions of the state and federal constitutions have no application.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial. A. J. Buckles, Judge presiding.

The facts are stated in the opinion of the court.

Lee D. Windrem, J. J. Dunne, and H. M. Owens, for Appellant.

J. P. Montgomery, and W. Lair Hill, for Respondent.

LENNON, P. J.—This is an appeal from an order denying a new trial and from a judgment in *mandamus*, wherein the defendant, the city council of the city of Richmond, is commanded to forthwith fix a date for the holding of an election for the recall of six of its members.

That portion of the charter of the city of Richmond which bears directly upon the questions involved may be epitomized as follows:

The holder of an elective office may be removed by the electors qualified to vote for the successor of the officer sought to be removed. The petition for the removal of an officer must be signed by such electors equal in number to at least twenty-five per cent of the entire vote cast at the preceding general municipal election. Each signer of such petition shall add to his signature his place of residence, giving the street and number thereof, and the petition must contain a general statement of the grounds for which the removal is sought. Any qualified elector or taxpayer of the municipality is competent to solicit signatures to a petition for the removal of an officer. The petition, which must be filed with the city clerk, is required to be verified by the affidavit of the person soliciting the same, setting forth that all of the signatures thereto were made in his presence, and are the genuine signatures of the persons purporting to have signed the petition. No other affidavit as to the genuineness of the petition shall be required. Each signature, the genuineness of which is not called into question by the sworn affidavit of the purported signer thereof, shall be presumed to be genuine, and unless and until it be proven otherwise by official investigation it must be presumed that the petition presented contains the signatures of the requisite number of qualified voters.

Within ten days from the date of filing such petition the clerk shall examine and ascertain from the records of registration whether or not it has been signed by the requisite number of electors; and the clerk, if he find the petition to be sufficient, shall attach to the same his certificate showing the result of his examination, and thereupon submit the petition to the city council. It is then made the duty of the council to fix a date for and order an election for the recall of the officer sought to be removed, not less than thirty days nor more than forty days from the date of the clerk's certificate to the council that a sufficient petition has been filed. Any officer sought to be removed may be a candidate to succeed himself, and unless he requests otherwise in writing, the clerk shall place his name on the ballot without nomination. At such election the candidate receiving the highest number of votes shall be declared elected; and if any person other than the incumbent receives the highest number of votes, the incumbent shall be deemed removed from office.

In substance the petition for the writ of mandate alleges that the plaintiff was on and prior to the tenth day of May, 1909, a resident, freeholder, taxpayer and a legally qualified elector of the city of Richmond, and as such was legally qualified to vote for the various candidates for municipal office in said city. On the tenth day of May, 1909, as the result of a municipal election, E. J. Jarrard, C. A. Fallett, O. P. Ludwig, J. B. Willis, J. C. Owens, J. N. Hartnett, J. J. Dooling, H. E. Wyatt and Ed. McDuff were elected city councilmen, and ever since then have constituted the city council of the city of Richmond. In the month of June, 1910, the plaintiff, in conjunction with other qualified electors of the city, prepared and circulated therein petitions for the recall of J. B. Willis, J. C. Owens, J. M. Hartnett, J. J. Dooling, H. E. Wyatt and Ed. McDuff. Each of the petitions, asking for the recall of the designated councilmen, were signed by three hundred qualified electors of the city of Richmond, which was equal to twenty-five per cent of the entire vote cast at the preceding municipal election, and all of the signers of the several petitions were qualified electors who would have been entitled to vote for the successors of the incumbents sought to be removed. Each of the recall petitions set out the place of residence, by street and number, of every signer, and al-

leged the grounds of recall to be that the six councilmen sought to be removed had been guilty of (1) malfeasance in office, (2) that they had been parties to a political agreement by which the office of city engineer was traded in consideration of other appointments; (3) that such political trafficking was contrary to the spirit of the charter and a detriment to the public interest; (4) that the accused councilmen had united in denying the petition of a majority of the qualified electors in matters of public policy; and further and finally (5), that the signers of the petition for the recall no longer desired the services of those particular councilmen.

The petitions were filed with the city clerk of the city of Richmond on the second day of July, 1910, and within ten days thereafter the city clerk duly examined and compared them with the registration records, and found that each and all of said petitions were signed by the requisite number of electors, and that each and all of the signers were entitled to vote for the successors of the councilmen sought to be removed. The city clerk, on the eleventh day of July, 1911, submitted to the city council the several recall petitions, with his certificate attached thereto, showing the result of such examination and comparison, and that said petitions were in all respects sufficient; but because of the machinations of the six accused councilmen the city council not only neglected but absolutely refused to provide for and set a date for the election prayed for in the petitions.

It is contended at the outset by counsel for the defendant that the petition for the writ of mandate is fatally defective, in that it fails to show affirmatively that the plaintiff is a party beneficially interested in the subject matter of the litigation, as required by section 1069 of the Code of Civil Procedure.

The point is not well taken. The petition alleges that the plaintiff is an elector and taxpayer of the city of Richmond; and as such it is clear that he is directly interested in the subject matter of the action. The injury complained of is the wrongful denial of the right to vote upon a question which affects the welfare of the community individually and collectively, and the relief sought is the securing of an enforcement of the right. It needs no argument, or citation of authority, it seems to us, to maintain the proposition that presumptively

every elector of a municipality is beneficially interested in the manner in which the governmental affairs of the municipality are being administered by the representatives of the people. True, it has been held in the case of *Linden* v. *Board of Supervisors of Alameda Co.*, 45 Cal. 6, that because an individual elector seeking to compel an election on the question of a removal of the county seat, had no interest in the subject matter of the action distinguishable from the balance of the community, his interest was neither beneficial nor sufficient to support an application for a writ of mandate. But the rule there announced has since been modified, if not wholly disregarded and discredited, in later decisions by the same court; and we think that the prevailing and more logical rule in this and other jurisdictions may safely be declared to be that when the purpose of a petition for a writ of mandate is to compel the performance of a public duty not due to the government as such, it need not appear that the interest of the petitioner, if he be a qualified elector, is in any way different from that of the balance of the community. While the refusal of a public officer or board to take such action as may be required for the proper enforcement of the law is no more the concern of one citizen than of another, nevertheless it is not only the right, but the duty, of every citizen to insist upon the prompt and proper performance of official duty which affects the public interest generally. And it is enough in this instance that the petitioner for the writ of mandate is a qualified elector of the municipality, and as such interested in having the law enforced. (High on Extraordinary Legal Remedies, secs. 431, 433; *Maxwell* v. *Board of Supervisors,* 53 Cal. 389; *Hyatt* v. *Allen,* 54 Cal. 353; *Eby* v. *Board,* 87 Cal. 166, [25 Pac. 240]; *Frederick* v. *San Luis Obispo,* 118 Cal. 391, [50 Pac. 661]; *Union Pac. R. R. Co.* v. *Hall,* 91 U. S. 355, [23 L. Ed. 428]; *State* v. *Weld,* 39 Minn. 426, [40 N. W. 562]; *Pumphrey* v. *Baltimore,* 47 Md. 145, [28 Am. Rep. 446]; *State* v. *Menzie,* 17 S. D. 535, [97 N. W. 745]; *State* v. *Lien,* 9 S. D. 297, [68 N. W. 748]; *People* v. *Swanstrom,* 79 App. Div. 94, [79 N. Y. Supp. 936]; *State* v. *County Court,* 33 W. Va. 589, [11 S. E. 72]; *State* v. *County Court,* 47 W. Va. 672, [35 S. E. 959]).

It is next contended, upon behalf of the defendant, that the facts stated in the petition do not constitute a cause of action or entitle the plaintiff to the relief demanded.

In this behalf it is claimed that neither in the general charge of malfeasance in office, nor in the more specific charges which follow in the several recall petitions, is there any statement of fact or circumstance which would enable the accused councilmen to know and understand the particular dereliction of which they are accused.

It is a mistaken theory of counsel for the defendant that the charter provisions of the city of Richmond contemplate and require that a recall petition should be drawn with a due regard for the technical niceties and refinements of the rules of law which pertain to the preparation of pleadings in civil and criminal cases. At the outset the charter under discussion declares that "The holder of an elective office may be removed by the electors qualified to vote for the successor of the officer sought to be removed." Manifestly, the purpose of the charter in providing for a recall election is to give the people of the municipality the right to cut short the official term of every elected officer whose conduct in office is for any cause unsatisfactory or distasteful to the body of the community. The method for doing this is clearly pointed out in the charter; and nowhere in the procedure provided for the removal of the incumbent of an elective office is anything said, either expressly or impliedly, which requires a recall petition to designate the specific acts for which a removal is sought. The petitioners are only required to state generally their grounds or reasons for demanding the removal of the obnoxious officer, for the obvious and only purpose, it seems to us, of furnishing information to the people of the community, upon which a political issue rather than an issue at law may be raised and determined.

The people of the city of Richmond, in framing their charter, reserved to themselves the right to remove a public officer by the same process and in the exercise of the same discretion which elected him.

It will not be disputed that the electors of a community are as well qualified to determine whether an administrative officer shall remain in office as they were to decide upon his qualifications for office in the first instance; and in so far as the charter of the city of Richmond is concerned, it is clearly the privilege of the people at the polls, rather than the province of the courts, to pass upon the sufficiency of the grounds

stated for the removal of an elected officer by the modern method of a recall election.

It is sought to justify the refusal of a defendant to call the election prayed for upon the theory that the charter vests the city council with final and exclusive jurisdiction to pass upon the form and sufficiency of the recall petitions, and that, in the absence of a finding by the council as to the sufficiency of the petitions, *mandamus* cannot be invoked to compel the defendant to fix a date for the election.

It may be conceded, as contended by counsel for defendant, that the jurisdiction of the city council to order a recall election depends upon the presentation to it of a petition signed not only by the requisite number of electors entitled to vote for the successor of the office sought to be removed, but sufficient as well upon its face in material matters of form and substance.

In this connection it appears that some of the signers of the several recall petitions did not sign their names in full—that is to say, they gave only the initials of their given names. Others failed to comply with the charter requirement that each signer "shall add to his signature his place of residence, giving the street and number." Because of this it is urged that the petitions upon their face fail to contain the requisite number of adequate signatures called for by the charter, and that therefore the petitions were wholly insufficient to confer jurisdiction upon either the city clerk or the city council to inaugurate the recall election petitioned for.

No useful purpose would be subserved by following counsel for defendant through the intricate ramifications of the technical argument which they have advanced in support of their contention. If the charter provisions under consideration were susceptible of any such narrow construction as is here contended for, it would be practically impossible to invoke a recall election in the city of Richmond. The charter in question, like every other statute, should receive a liberal construction with a view to promoting the purpose for which it was enacted by the people; and so construed, we find no difficulty in holding that the charter provision requiring the clerk to "examine and ascertain from the records of registration" whether or not the petitions were signed by the requisite number of qualified voters, does not empower or

command him to decide as to the regularity of the registration of the signers with respect to the manner or form in which their names and addresses appear upon the register.

All that the charter requires the clerk to do is to identify the persons who have signed with the persons whose names appear in the records of registration. The charter provision requiring the signer to give his residence by street and number manifestly was intended solely for the purpose of facilitating the work of the clerk in investigating, identifying and verifying the persons and signatures of the purported signers of the recall petitions, and, therefore, the designation of residence at the junction of two streets, which some of the signers gave, was a substantial and sufficient compliance with the requirements of the charter.

By the provisions of the charter the city clerk may not arbitrarily reject or refuse to act upon a petition because of any real or fancied doubt which he may have as to the genuineness of all or any of the signatures appended to the petition. The petition upon its presentation is *prima facie* genuine as to the signatures, for, by the very terms of the charter, ''Each signature, the genuineness of which is not called in question by the sworn affidavit of the alleged owner thereof, shall be presumed to be genuine.'' This presumption, we take it, controls not only the city clerk, but the city council as well. Immediately following this requirement of the charter is the proviso that ''Unless and until it be proven otherwise by official investigation it shall be presumed that the petition presented contains the signatures of the requisite number of qualified voters,'' and then the duty of making an official investigation for the purpose of ascertaining whether or not the petition is signed by the requisite number of electors entitled to vote is clearly committed to the city clerk.

It seems clear to us, therefore, that in so far as the number and genuineness of the signatures of electors entitled to vote are concerned, the city clerk alone, by the express provisions of the charter, is empowered to pass upon and determine the sufficiency of every recall petition that may be filed with him, and that in these two particulars at least his finding and certificate are conclusive and controlling.

Granting to the city council the right and duty of ascertaining whether or not the petitions upon their face conformed to

the charter requirements in material matters of form and substance, still this did not invest the city council with the arbitrary power to refuse to take any action at all in the premises.

In the case at bar the petitions upon their face in form and substance conform to the spirit and letter of the charter; and as there was no controversy before the council or elsewhere as to the sufficiency of the petitions, the duty of the council in the premises was purely ministerial and clearly defined by the charter.

The city clerk, having submitted to the city council proper petitions for a recall election, together with his certificate as to their sufficiency, it became the plain duty of the city council, in the mandatory language of the charter, to "thereupon order and fix a date for holding said election."

In the case of *Good* v. *Common Council*, 5 Cal. App. 265, [90 Pac. 44], which involved the application and interpretation of recall provisions in a city charter similar in its essential features to the one at bar, practically the same point was presented and decided adversely to the contention made here. There the court said: "There is no discretion vested in the common council in connection with the calling of this election. That body's functions are purely ministerial, but if it be conceded that it was vested with some discretion, it does not follow that it can refuse to act. The duty of determining whether the petition contains the proper number of signatures, and comparing them with the great register, devolved upon the city clerk. He is the person given authority to hear and determine the question of the sufficiency of the petition, and no appeal therefrom is provided, and none apparently intended to be given."

The trial court found as a fact that each of the persons who circulated the recall petitions was, as required by section 1 of article 8 of the charter, a qualified elector of the municipality. This finding is now assailed by the defendant, not upon the ground that it is without support from the evidence, but because "it is flatly contradicted" by the evidence produced upon behalf of the defendant. Attached to and made a part of each recall petition was the affidavit of the person who solicited the same, which, among other things, set forth the fact that he was a qualified and registered elector of the city

of Richmond. These affidavits, as a part of the several re-call petitions, were received in evidence, without reservation or limitation; and even if it be true, as is now claimed by the defendant, that the statements therein made are contradicted by the evidence offered and admitted upon behalf of the plaintiffs in the form of the affidavits of registration which were made by the several solicitors to the recall petitions, this results in nothing more than a conflict of evidence, and in such contingency the finding of the trial court must be sustained.

The defendant presents, but does not strongly urge, the point that the court had no jurisdiction to issue the writ of mandate in the case at bar, because the time prescribed and limited by the charter for ordering and fixing the date of the recall election had expired when the writ was issued.

Ordinarily, a writ of mandate will not issue to compel the performance of an official act if, when the writ is applied for, the time limited by law for action has expired; but this rule does not apply in a case like the one at bar, where the requirements and purpose of the law have been disregarded and defeated, of their own volition, by the very officers intrusted with the performance of a public duty which was clearly obligatory. (Merrill on Mandamus, secs. 50, 79; 2 Dillon on Municipal Corporations, sec. 839; High on Extraordinary Legal Remedies, 401; *Good* v. *Common Council,* 5 Cal. App. 265, [90 Pac. 44] ; *People* v. *Town of Fairbury,* 51 Ill. 149.)

If, as we think, the charter provisions in controversy confer upon the city clerk the exclusive and final duty of officially investigating the sufficiency of the petitions in respect to the number of qualified electors who have signed the same, and that the duty of the city council, upon the presentation to it of a recall petition *prima facie* sufficient and certified by the city clerk to be sufficient, is purely ministerial, then the trial court was right in its ruling in rejecting the offer of the defendants to impeach the integrity of the clerk's certificate as to the sufficiency of the several recall petitions.

The question of the constitutionality of the recall provisions in the charter under consideration is tentatively touched upon but not seriously discussed in the printed arguments of counsel for the defendant. Upon the oral argument, however, it was strenuously insisted that the attempted recall of a municipal officer, who has been elected to serve in office for a fixed term, is violative of the provisions of the state con-

stitution regarding tenure of office, removal and impeachments.

Manifestly the tenure of office, and the method of removing an elected city official, are purely municipal affairs, which in no sense conflict with the constitutional provisions relating to the tenure of office or the removal by impeachment of state officers. Similar recall provisions, as applied to administrative officers, have been upheld and declared not to be in conflict with either state or federal constitution in other jurisdictions, where the points of attack were identical with the arguments advanced here. (*Graham* v. *Roberts,* 200 Mass. 152, [85 N. E. 1009] ; *Hitzinger* v. *Gillman,* 56 Wash. 228, [105 Pac. 471, 21 Ann. Cas. 305] ; *Bonner* v. *Besterling* (Tex. Civ. App.), 137 S. W. 1154.) Nothing that has been said or cited by counsel has caused us to doubt the constitutionality of the charter provisions in question.

The judgment and order appealed from are affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1912, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing in the supreme court is denied. The supreme court, however, does not thereby approve that part of the opinion of the district court of appeal which declares that under the provisions of the charter of Richmond the certificate of the city clerk of the city of Richmond to the effect that the signatures to the recall petitions are genuine and that they are sufficient in number to require a recall election, is conclusive and controlling. It does not appear that there was any evidence offered to impeach the accuracy of the clerk's certificate upon these points and the statement was not necessary to the decision. Such signatures might be forged, or the signers might not reside in the city, and yet the petitions might be supported by false affidavits of the solicitors and a false certificate of the clerk. In such a case we would not say that the clerk's certificate was conclusive, or that *mandamus* would lie to compel an election to be called, but leave the question open for decision when it arises.