[L. A. No. 11397. In Bank.—May 16, 1929.]

HENRY OTHMER, Petitioner, v. THE CITY COUNCIL OF THE CITY OF LONG BEACH et al., Respondents.

Denio, Hart, Taubman & Simpson for Petitioner.

Linnell & Linnell for Respondents.

SHENK, J.—*Mandamus* to compel the City Council of the City of Long Beach to call a special recall election.

Section 308 of the city charter (Stats. 1921, p. 2145), so far as pertinent to this controversey, provides: "The holder of any elective office, or the city manager, in the city of Long Beach, may be recalled by the qualified electors of the city of Long Beach at any time after he has held office for six months. Not less than ten nor more than twenty-five qualified electors of the city of Long Beach may originate a petition of recall in the following manner: The said qualified electors shall file with the city clerk a petition containing a general statement of the ground or grounds for which the recall of the official is sought. This petition shall be signed by each of the petitioners originating the recall, each signer adding to his signature his place of residence, giving street and number, and the date of signing. The city clerk shall file the petition, and shall cause the said petition with the signatures attached thereto to be published for three successive

days in the official newspaper of the city, with notice therein that said petition is in the city clerk's office open for signatures. The city clerk shall, during office hours for thirty days from the last day of publication aforesaid, keep the petition open for signatures by the qualified electors of the city, each signer to add to his signature his place of residence, giving street and number, and date of signature. No petition other than the originating petition shall be signed or presented for signature at any place other than the city clerk's office, and must be verified by the city clerk or one of his deputies. At the expiration of said thirty days the city clerk shall declare the petition closed for the purpose of examination, and within five days thereafter shall ascertain whether said petition is signed by qualified electors of the city of 'Long Beach equal to not less than ten per cent of the entire votes cast at the last general municipal election; and the city clerk shall attach to the petition his certificate showing the result of such examination, stating the number of qualified voters found upon said petition, and the number of persons not qualified to vote, and in checking said petition the city clerk shall designate the names of persons found thereon not qualified to vote, with the letters 'D. V.' in red ink opposite such name or names. . . . If the petition shall be found to be sufficient, the city clerk shall submit the petition of recall, together with his certificate, to the city council without delay, whereupon the city council shall forthwith cause a special municipal election to be held not less than thirty nor more than forty days after the date of the order calling such election, to determine whether the voters shall recall such officer. If the same ground or grounds are alleged, one petition shall be sufficient to purpose the recall of one or more officials. . . . ''

The petition herein alleges the official status of the respondents as the nine members of the City Council of said city; also that on January 28, 1929, twenty qualified electors of said city, including the petitioner, filed with the city clerk of said city a petition for the recall of the respondents, N. H. Alexander, E. L. Taylor, W. L. Evans and R. M. Hicks, members of said council, which petition was signed by said twenty qualified electors, each adding to his signature his place of residence, giving his street number and the date of signing, and that said petition contained a general state-

ment of the grounds for which the recall of said four named respondents was sought. A copy of the recall petition is attached to the petition and the same discloses that the same grounds of recall are specified as to each of said four respondents. It is further alleged that the city clerk filed the recall petition and caused the same to be published, as required by the charter provision, in the official newspaper of said city; that during office hours for thirty days after the last day of publication the city clerk kept said petition open for signature by the qualified electors of said city; that no other petition was signed or presented for signature at any place than the office of the city clerk; that within office hours during said thirty-day period 3,776 persons signed said petition at the office of the city clerk, each of said signers adding to his signature his place of residence, giving street and number, and date of signing; that at the expiration of said thirty-day period the city clerk declared the petition closed for the purpose of examination, and within five days thereafter ascertained whether said petition was signed by qualified electors of said city equal to not less than ten per cent of the entire vote cast at the last preceding municipal election; that the city clerk checked said petition and designated the names of persons found thereon not qualified to vote with the letters "D. V." in red ink, opposite such names; that 3,559 of said persons were and are and were found by said city clerk to be qualified electors of said city of Long Beach; that the city clerk attached to said petition his certificate showing the result of such examination, stating the number of qualified electors whose signatures were attached to said petition to be 3,559, and the number not qualified to vote to be 217, and that the total vote cast at the last general election was 27,739; that said petition was found to be sufficient, and that the city clerk did, on the eighth day of March, 1929, submit said petition, together with his said certificate, to the respondent City Council; that thereupon and at the time of submission of said petition and certificate to the City Council the same were ordered filed, whereupon Councilman Barton moved that an election be called to be held on April 16, 1929, to determine whether the voters should recall the four councilmen named in the recall petition; that said motion was seconded, and upon the same being put to a vote, Councilmen Hauge, Barton and Stakemiller voted in favor

thereof and Councilmen Alexander, Taylor, Hicks, Jones and Lo Rentz voted against the same, Councilman Evans being absent.

As a return to the alternative writ the respondents filed a demurrer and an answer at the same time. The grounds of the demurrer have been considered and found to be without merit and, except as to one, need not be discussed. ■ As to this one ground it is contended that said section 308 of the charter is uncertain, defective and void, in that no provision is made therein for the method of procedure to be followed by the clerk in ascertaining whether the originating petition of not more than twenty-five qualified electors or the petition as later signed contains the signatures of the requisite number of qualified electors. As to the originating petition the same is not entitled to be filed unless it has appended thereto the signatures of the required number of qualified electors. Each elector is required to affix his place of residence, giving street and the date of signing. This information is sufficient to enable the clerk to ascertain by the usual method in such cases, viz.: by an inspection of the records of registration, whether the petition is entitled to be filed. It is the duty of the clerk to ascertain the fact, and it must be presumed that his official duty will be regularly performed. (Sec. 1963, Code Civ. Proc.) As to the closed petition the charter imposes upon the clerk the duty to ''ascertain whether the petition is signed by qualified electors of the city'' in the requisite number. It is true that the charter does not require how the clerk shall ascertain the fact as to each signer, but we think this omission is not fatal to the validity of the charter provision, for it must also be assumed that the clerk would employ the means available to ascertain the fact and would resort most naturally to the records of registration for that purpose. (See *Wolfskill* v. *City Council of Los Angeles,* 178 Cal. 610 [174 Pac. 45].) The demurrer is therefore overruled.

The answer purports to raise certain issues of fact which, if material, and are not satisfactorily answered by the record before us, would require a reference. ■ In response to the allegations of the petition that the originating recall petition was filed in the office of the city clerk, and that qualified electors of said city signed said petition, the respondents, for want of information or belief on the subject,

deny that such petition was so filed, and for the same reason deny that the twenty persons whose names were signed thereto were qualified electors of said city. Those denials are denials of matters of public record and the form thereof is insufficient to raise an issue and must be deemed to be an admission of the allegations to which the denials assume to be responsive. (*Santa Barbara Lumber Co.* v. *Ross*, 183 Cal. 657 [192 Pac. 436]; 21 Cal. Jur., p. 150, and cases cited.)

The same condition of the answer obtains with reference to the allegation of the petition herein that 3,559 of the persons who signed the closed petition were qualified electors of said city. It is nowhere alleged in the answer that the persons who signed the originating petition or that the 3,559 of the persons who signed the closed petition were not qualified electors of the city. That they were qualified electors must, therefore, stand as an admitted fact in the case.

Other allegations of the petition are denied, but such denials for the most part relate to matters affirmatively set forth in a separate defense, and must be considered in connection therewith. The allegations of the separate defense may, for the purposes of this proceeding, be deemed to be true. In substance it is therein averred that after the publication of the notice in the official paper notifying electors of the city of the filing of the petition for recall in the office of the city clerk, and during the thirty-day period after the last publication of said notice, the originating petition was kept in the vault at the office of the city clerk and that no further signatures were attached to that paper; that after the publication of said notice the city clerk prepared six separate documents, consisting of a copy of said notice (which contained a copy of the originating recall petition), pasted on a blank sheet of paper and other blank sheets of paper attached and bound thereto, the blank sheets containing places for signatures; that the documents so prepared by the city clerk were placed on desks and counters in the clerk's office and that all of the signatures of electors alleged by the petition to have been obtained were appended to the copy of the notice to voters and the sheets appended thereto; that the city clerk himself did not personally supervise the signing of each document so as to enable him to verify all of the signatures thereto and that neither the city clerk nor

any particular deputy of the city clerk was present during the signing of all of said signatures; that due to the procedure followed it was impossible for the clerk himself or for any one of his deputies to identify and verify all of said signatures; that after the expiration of the thirty-day period the clerk caused the several duplicate copies or sections of the alleged petition, with the signatures appended thereto, to be attached to the original petition filed in his office on January 28, 1929, in such manner as to make it appear that they were so attached at the time all of the signatures were appended; that thereafter the city clerk went to the city of Los Angeles, the county seat of the county in which the city of Long Beach is situated, accompanied by a deputy clerk and other persons who were neither deputies nor assistants of the city clerk, nor in the regular employ of the city clerk, and that the clerk, his deputy and such other persons examined the great register and affidavits of registration and compared the signatures therein with the signatures attached to the copies of the recall petition; that the persons, other than the deputy city clerk, who were so employed by the city clerk to make such comparisons "were wholly unauthorized to determine any of the facts or the genuineness of signatures, and that it was upon such illegal, void determinations and hearsay that the said city clerk made his purported and alleged finding and certificate which he filed with the council" certifying to the genuineness of 3,559 of said signatures, and that the city clerk was therefore without sufficient knowledge to enable him to make such certificate. Wherefore, it is alleged, the recall petition was not legally authenticated and no obligation rests upon the respondents to call said recall election.

Admitting all of the foregoing allegations of the affirmative defense to be true, we are of the opinion that there was a substantial compliance with the law in all of the steps leading up to the presentation of the recall petition to the City Council. ■ It is conceded that each document signed by the electors had attached thereto and preceding the signatures a copy of the originating recall petition. There was nothing in the duplicate copies of the petition to mislead the electors and there can be no doubt that each signer fully understood that he was signing a petition for the recall of the four councilmen. It is not disputed that all of the

signatures attached to the duplicate petitions were appended in the office of the city clerk. Such being the fact, it would seem to be unreasonable to require that all of the electors must sign one document if by any rational construction of the charter provision the several documents as signed may, when assembled and attached, rightly be deemed to be a single petition. By necessary implication the charter contemplates that more than one document or petition may be signed. It provides that "no petition other than the originating petition shall be signed, or presented for signature, at any place other than the city clerk's office." This provision plainly means that the originating petition may be signed outside of the office of the city clerk and that other petitions to the same effect not only may, but must, be signed in the office of the city clerk. The language of the charter is entirely inconsistent with the contention that all ·of the signatures must be appended to one sheet of paper or to one series of papers constituting but one document. It has been held in other states, under like statutory requirements, that it is sufficient if the names of the petitioners appear on different petitions of the same form and content. (*Smith* v. *Patton,* 103 Ky. 444 [45 S. W. 459]; *Douglas* v. *County Commrs.,* 23 Fla. 419 [2 South. 776].) In *People* v. *Town of Berkeley,* 102 Cal. 298 [23 L. R. A. 838, 36 Pac. 591], it appeared that eight several petitions, identical in form, for the reorganization under general law of a town theretofore established under a special charter in accordance with the provisions of ·the General Municipal Corporation Act (Stats. 1883, p. 93), had been presented to the board of trustees. After all of these petitions had been signed the signatures on seven of them had been cut off by some person having no authority so to do and had been attached to the eighth so as to make it appear that they formed a part of the eighth petition. The statute required that "a petition" for the reorganization election be signed and presented to the board of trustees. The procedure followed was held to be fatal to the reorganization proceeding, but in the course of the opinion the court stated: "Probably if the several petitions as signed had been presented they might and should be regarded as 'a petition' within the meaning of the statute; and in a similar case it was so held by the supreme court of Florida. (*McKinney* v. *County Commrs.,* 26 Fla. 267 [4

South. 855].)'' While the above general statement of the court was *obiter*, we think it correctly states the rule that may safely be followed and that should govern in all similar cases. No sound reason has been advanced why duplicate copies of the petition may not be signed and used as effectually as one. If duplicates be forbidden, the right of recall, especially in populous centers, would be greatly restricted for no substantial reason. The fact that the duplicate petitions involved in this proceeding contained also the language of the notice to voters would not destroy their effectiveness. This language was in nowise confusing or misleading and may be treated as surplusage.

It is contended by the respondents that the clerk's verification was defective. ■ The verification referred to is that required by the above-quoted clause in section 308 reading as follows: ''No petition other than the originating petition shall be signed or presented for signature at any place other than the city clerk's office, and must be verified by the city clerk or one of his deputies.'' It must be conceded that the language thus employed is ambiguous and leaves it uncertain as to what is to be verified. The subject of the verb ''must be verified'' is missing. Quite reasonably it may be said that the subject of the verb is not the originating ''petition.'' The context plainly implies that the subject intended and which must be supplied by necessary implication is ''such fact,'' that is, the fact that the petitions other than the originating petition were signed or were presented for signature at no other place than the office of the city clerk. This was the construction placed upon the charter requirement by the city clerk, for, under date of March 8, 1929, he certified under oath that ''said petition was opened for signatures by the qualified electors of the city of Long Beach on the 2d day of February, 1929, and was kept open at the office of the city clerk of the city of Long Beach during office hours from the said second day of February, 1929, to and including the 2d day of March, 1929; that during said time and at said place the signatures thereto were signed . . . respectively in the presence of said city clerk, or in the presence of one of his duly appointed, qualified and acting deputies.'' ■ The facts stated under oath in this certificate are sufficiently responsive to the requirements of the charter. The certificate is regular on its face; no bad faith, fraud or mis-

take on the part of the city clerk are alleged, and he appears to have performed his duties regularly under the law. His certificate is therefore final and conclusive and is not open to attack in this collateral proceeding. (See *Conn* v. *City Council,* 17 Cal. App. 705 [121 Pac. 714, 719]; *Koehler* v. *Board of Trustees,* 83 Cal. App. 648 [257 Pac. 187].)

■ It is suggested by respondents that the proof would show, if evidence were taken, that the number of signatures which the clerk actually saw appended to the petition in his office would be negligible. It is accordingly argued that the clerk could not properly make the verification in question. In this connection counsel have missed the purpose of the verification. It is not for the purpose of establishing that the signatures appended are the genuine signatures of the persons whose names are appended to the petition. The genuineness of the signatures is a matter for ascertainment after the names have been signed and the petition has been closed and in accordance with subsequent provisions of said section 308. The purpose of this verified certificate is to show that the names were signed only in the office of the city clerk. For the purpose of proof of this fact it should not be necessary that the clerk personally see every name signed to the petition. It is sufficient if the names are signed under his direction in such manner that he or one of his deputies may certify to the fact that the petitions remained in his office during the time they were being signed.

■ The respondents next attack the sufficiency of the action of the city clerk in certifying to the sufficiency in number and the genuineness of the signatures attached to the petition. The basis of the contention is that neither the city clerk nor his regular deputies compared all of the signatures on the petition with the records of registration. It is conceded that the city clerk took the petitions to the office of the registrar of voters of said county for the purpose of ascertaining the genuineness of said signatures, and that accompanying him were one of his deputies and several other persons specially employed by the city clerk for the purpose of checking the signatures with the affidavits of registration, and that the persons so specially employed assisted in the task of checking. From these facts it is argued that the certificate of the city clerk to the effect that he ascertained that the petition was sufficiently signed by qualified voters of the city was

based, at least in part, on hearsay, and therefore unauthorized. We find no merit in the contention. Here again, no fraud, bad faith or mistake in connection with the checking of the signatures is alleged and forgery on the part of the persons signing the petition is not claimed or intimated. Furthermore, it is not contended by the respondents that genuine signatures of qualified electors of the city in the number certified by the city clerk were not attached to the petition. The answer merely denies that the city clerk, within the five-day period, ascertained that the petition was signed by the requisite or any number of qualified electors. The execution of this certificate by the city clerk is admitted. It is regular on its face. The charter imposes upon the city clerk the duty of ascertaining the sufficiency of the petition and of certifying the fact to the City Council. In the absence of allegations of bad faith, fraud, mistake or forgery, his certificate, made within the scope of his charter duties, is conclusive on the City Council and on the court. (See *Good* v. *Common Council,* 5 Cal. App. 265 [90 Pac. 44]; *Laam* v. *McLaren,* 28 Cal. App. 638 [153 Pac. 985]; *Fraser* v. *Cummings,* 48 Cal. App. 504 [192 Pac. 100]; *Magoon* v. *Heath,* 79 Cal. App. 632 [250 Pac. 583]; *State* v. *Houston,* 94 Neb. 445 [50 L. R. A. (N. S.) 227, 143 N. W. 796]; 21 Cal. Jur., pp. 1000, 1001.) In the performance of his charter duty we perceive no valid objection to the action of the city clerk in availing himself of the assistance of competent persons specially employed for the purpose of checking the signatures on the petition. The clerk is allowed five days only to do this work. His regular force might be entirely inadequate to the performance of the task and the limitation of time might render it impracticable, if not impossible, to add regular deputies to his office force for this particular purpose. If the clerk be denied the right to employ competent persons to check the signatures the recall proceeding might easily be thwarted for lack of proper assistance. No question is raised by the respondents as to the competency of the persons so specially employed and it appears that their work was done under the supervision of the clerk or one of his regular deputies. The results of their work were sufficient to enable the clerk to rely thereon in making his certificate.

■ When the Long Beach charter provision relating to the recall is given, as it must be, a liberal interpretation with the view of promoting the purposes for which it was enacted (*Worth* v. *Downey*, 74 Cal. App. 436 [241 Pac. 96]; 21 Cal. Jur., p. 1002), we find a substantial compliance therewith in the proceedings leading up to the presentation of the recall petition to the City Council. It is also apparent that no material issues of fact are presented by the record which would require a reference. The duty of the City Council to call the special election as required by law is therefore manifest. (See *Ratto* v. *Board of Trustees*, 75 Cal. App. 724, 727 [243 Pac. 466].)

Let the peremptory writ issue as prayed.

Curtis, J., Langdon, J., Preston, J., and Richards, J., concurred.