[Sac. No. 6639. In Bank. Feb. 14, 1956.]

THOMAS M. JENKINS et al., Petitioners, v. GOODWIN J. KNIGHT, as Governor, etc., Respondent.

[Sac. No. 6637. In Bank. Feb. 14, 1956.]

ROSS H. BOYD et al., Petitioners, v. GOODWIN J. KNIGHT, as Governor, etc., Respondent.

[Sac. No. 6638. In Bank. Feb. 14, 1956.]

HERBERT LICKER et al., Petitioners, v. GOODWIN J. KNIGHT, as Governor, etc., Respondent.

Aaronson & Cohn, Melvin E. Cohn, Michael Aaronson, Frank W. Rose, William W. Penaluna, Roger Kent and Lester Van Tatenhove for Petitioners.

Edmund G. Brown, Attorney General, and Leonard M. Friedman, Deputy Attorney General, for Respondent.

GIBSON, C. J.—The Constitution of California provides that when vacancies occur in either house of the Legislature the Governor "shall issue writs of election to fill such vacancies" (Cal. Const., art. IV, § 12), and it is provided in section 1773 of the Government Code that when such vacancies occur the Governor shall issue writs of election "at once."

Three seats in the Assembly became vacant as a result of the resignation or death of persons elected for the term ending December 31, 1956. One of the vacancies occurred on January 3, 1955, and the other two in July of that year. The Governor failed to call special elections to fill the offices, and on August 29, 1955, petitioners brought these original proceedings in mandamus to compel him to act. After briefs had been filed and the cases had been orally argued, the Governor, on January 4, 1956, issued proclamations ordering special elections to be held on June 5, 1956, the date of the presidential primary election.

These proceedings raise questions involving the power of the court to require the Governor to act, and the extent, if any, to which he has discretion with respect to calling and fixing the date for special elections to fill legislative vacancies.

There is a conflict of authority in this country as to whether a governor is amenable to mandamus with respect to any of his duties. (See 105 A.L.R. 1124; Kumm, *Mandamus to the Governor in Minnesota* (1924), 9 Minn.L.Rev. 21; cases collected in Holcomb, *Mandamus to the Chief Executive of the State* (1922), 3 S.W.Pol.Sci.Q. 25.) In some jurisdictions courts refuse to issue the writ against a governor under any circumstances, on the theory that interference with his action constitutes a violation of the doctrine of separation of powers or upon the ground that the issuance of a writ is inexpedient because of possible difficulty in enforcing it. (See 105 A.L.R. 1124, 1128, 1144; Kumm, *Mandamus to the Governor in Minnesota* (1924), 9 Minn.L.Rev. 21, 32; Holcomb, *Mandamus to the Chief Executive of the State* (1922), 3 S.W.Pol.Sci.Q. 25-29.) This reasoning has been rejected in many jurisdictions, including California, where it has been consistently held for more than three quarters of a century that the writ will issue to compel a governor to perform ministerial acts required by law. (*Stuart* v. *Haight*, 39 Cal. 87, 91; *Har-*

*pending* v. *Haight,* 39 Cal. 189, 209 et seq. [2 Am.Rep. 432] ; *Elliott* v. *Pardee,* 149 Cal. 516, 520 [86 P. 1087] ; *Hollman* v. *Warren,* 32 Cal.2d 351, 354 et seq. [196 P.2d 562] ; see *McCauley* v. *Brooks,* 16 Cal. 11 [overruled on other grounds in *Stratton* v. *Green,* 45 Cal. 149].)

■ These decisions are based on the fundamental principle that under our system of government no man is above the law. Chief Justice Stephen Field, speaking for the court in the early case of *McCauley* v. *Brooks,* 16 Cal. 11, 54-55, stated that where no discretion exists and a specific legal duty is imposed, ministerial in its character, an officer of the executive department of government, like any other citizen, is subject to judicial process and that, if this were not so, the government would cease to deserve the "high appellation" of being a government of laws. ■ In the leading cases of *Harpending* v. *Haight,* 39 Cal. 189, 211-213, and *Elliott* v. *Pardee,* 149 Cal. 516, 520 [86 P. 1087], it was held that the Governor should not be exempted from judicial process solely because he is the chief executive and that, like subordinate officers, he is amenable to mandamus to compel the discharge of a ministerial duty which a body of citizens has a right to have performed. The duties whose performance was compelled in the cited cases were enjoined by statute, but there is no indication that a different result would have been reached had they been imposed by the Constitution. ■ Although the courts in a few jurisdictions have held that they will not enforce ministerial duties imposed upon a governor by a constitution, we can see no logical basis for this classification. It would seem just as important to enforce duties directed by the people through the Constitution as those prescribed by the Legislature. (*Cf. O'Brien* v. *Olson,* 42 Cal.App.2d 449 [109 P.2d 8].)

■ Many acts of the Governor are, of course, inherently executive or political in nature, such as granting pardons, calling special sessions of the Legislature and signing or vetoing bills. (See *Harpending* v. *Haight,* 39 Cal. 189, 208.) They require the exercise of judgment or discretion, and for this reason the courts will not interfere with their performance. Unfortunately, the terms "political" and "executive" have been used loosely in some jurisdictions as an explanation for denying the writ in cases where the courts failed to make a proper analysis of the nature of the duty to be performed. ■ The critical question in determining if an act

required by law is ministerial in character is whether it involves the exercise of judgment and discretion.

It is clear that the duty imposed upon the Governor to issue writs of election to fill vacancies in the Legislature is ministerial in character. The Governor has no discretion to determine whether an election should be called; he is commanded by the Constitution to issue a proclamation. (Const., art. IV, § 12.) The provisions of our Constitution are mandatory and prohibitory unless expressly declared to be otherwise (see Cal. Const., art. I, § 22), and the duty to call elections to fill legislative vacancies is mandatory.

In related cases where officers enjoined by law to call a special election failed to act, it has been established that the duty is ministerial and that its performance may be compelled by mandamus. (*Blotter* v. *Farrell*, 42 Cal.2d 804 [270 P.2d 481] ; *Wahl* v. *Waters*, 11 Cal.2d 81 [77 P.2d 1072] ; *Morrow* v. *Board of Directors*, 219 Cal. 246 [26 P.2d 292] ; *Othmer* v. *City Council of Long Beach*, 207 Cal. 263 [277 P. 857] ; *Hill* v. *Board of Supervisors*, 176 Cal. 84 [167 P. 514] [overruled on other grounds in *Simpson* v. *Hite*, 36 Cal.2d 125 [222 P.2d 225]] ; *Scheafer* v. *Herman*, 172 Cal. 338 [155 P. 1084] ; *Hopping* v. *Council of City of Richmond*, 170 Cal. 605 [150 P. 977] [overruled by implication on other grounds in *Simpson* v. *Hite*, 36 Cal.2d 125 [222 P.2d 225]] ; *Teague* v. *Board of Trustees*, 156 Cal. 351 [104 P. 581] ; *Frederick* v. *City of San Luis Obispo*, 118 Cal. 391 [50 P. 661] ; *People ex rel. Miller* v. *Common Council*, 85 Cal. 369 [24 P. 727] ; *Gibbs* v. *Bartlett*, 63 Cal. 117; *Dye* v. *Council of The City of Compton*, 80 Cal.App.2d 486 [182 P.2d 623] [overruled on other grounds in *Hunt* v. *Mayor & Council of Riverside*, 31 Cal.2d 619 [191 P.2d 426]] ; *Whittemore* v. *Seydel*, 74 Cal. App.2d 109 [168 P.2d 212] [overruled on other grounds in *Hunt* v. *Mayor & Council of Riverside*, 31 Cal.2d 619 [191 P.2d 426]] ; *Brown* v. *City Council*, 103 Cal.App. 113 [284 P. 254] ; *Martin* v. *Board of Trustees*, 96 Cal.App. 705 [274 P. 1015] ; *Hilliker* v. *Board of Trustees*, 91 Cal.App. 521 [267 P. 367] ; *Magoon* v. *Heath*, 79 Cal.App. 632 [250 P. 583] ; *Ratto* v. *Board of Trustees*, 75 Cal.App. 724 [243 P. 466] ; *Worth* v. *Downey*, 74 Cal.App. 436 [241 P. 96] ; *Sidler* v. *City Council of Bakersfield*, 43 Cal.App. 349 [185 P. 194] ; *Wigley* v. *South San Joaquin Irr. Dist.*, 31 Cal.App. 162 [159 P. 985] ; *Osborn* v. *Board of Supervisors*, 27 Cal.App. 85 [148 P. 970] ; *Bigelow* v. *Board of Supervisors*, 18 Cal.App. 715 [124 P. 554] ; *Locher* v. *Walsh*, 17 Cal.App. 727 [121 P. 712] ; *Conn* v.

*City Council,* 17 Cal.App. 705 [121 P. 714, 719]; *Good* v. *Common Council,* 5 Cal.App. 265 [90 P. 44].) The authority of these cases with respect to the ministerial character of the function is not lessened by the fact that they involve local officials. ''It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined.'' (*Marbury* v. *Madison,* 1 Cranch (U.S.) 137, 170 [2 L.Ed. 60]; see *Harpending* v. *Haight,* 39 Cal. 189, 210; *McCauley* v. *Brooks,* 16 Cal. 11, 44.)

 The attorney general argues that, since no time is fixed in the Constitution within which the Governor must act after a vacancy occurs, his action involves an element of discretion. The answer to this argument is found in section 1773 of the Government Code which provides that, when vacancies occur, the Governor shall issue writs of election ''at once.'' Shortly after the vacancy occurred in January 1955, the Governor stated that he then saw no necessity for calling a special election to fill the office in the absence of an expression of policy from the county board of supervisors. It is apparent that the Governor wished to avoid requiring the taxpayers to bear the expense of holding a special election unless the supervisors were of the view that the expenditure would be warranted under the circumstances.*

 However, the exercise of the duty enjoined upon the Governor by the Constitution cannot be made dependent upon whether a board of supervisors considers an election to fill a vacancy in the Legislature to be in the public interest. The policy in this field has been determined by the people in section 12 of article IV of the Constitution. The importance of the duty to call special elections to fill vacancies in the Legislature is evident from the fact that failure to comply with the constitutional mandate would vitally affect the membership and operation of a coordinate branch of government as well as the basic right of the people to representation.

The question remains whether the Governor, when he issued the proclamations on January 4, 1956, acted in accordance with the law in fixing June 5, 1956 as the date on which the special elections are to be held. Petitioners argue that since

---

*In *Gibbs* v. *Bartlett,* 63 Cal. 117, 118, this court held that when the duty to hold a special election is enjoined by law, performance of the duty cannot be refused upon the ground that there may not be sufficient funds in the treasury to defray the expenses of the election.

the budget session of the Legislature will convene on March 5 and last for not more than 30 days, the elections should have been set at the earliest possible date so that the districts would be represented for at least a part of that session.

The statutes do not fix a maximum time within which such elections must be held but specify that a minimum of 70 days' notice must be given (Elec. Code, § 1001).† The Governor therefore has discretion to set the election for some date after the expiration of the 70-day period, but it must, of course, take place within a reasonable time after the issuance of the proclamation. For example, if the Governor had issued a proclamation promptly after the first vacancy occurred on January 3, 1955, and had then fixed the date of the special election for June 5, 1956, a serious question would have arisen as to whether his action constituted a reasonable exercise of discretion. We are not, however, confronted with that problem. The delay in issuing the proclamations cannot be remedied now; we are limited to the question of whether the Governor has abused his discretion in setting the date of the elections for June 5, 1956. The earliest possible date on which the elections could be held after January 4, 1956, the date the proclamations were issued, is March 14, and 16 additional days would have to be allowed for counting the absentee ballots. (Elec. Code, § 5932.5.) Were the election to be held on March 14, and were the budget session to last the full 30 days, the session would be nearly over before the person elected could qualify. In these circumstances it certainly cannot be said that the Governor acted unreasonably in fixing the date at June 5 to coincide with the presidential primary, thus sparing the counties involved the expense of holding two elections within a three-month period.

The alternative writs are discharged, and the peremptory writs are denied.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

---

†Section 1001 of the Elections Code, prior to its amendment effective September 7, 1955, provided that the proclamation should issue at least *ten* days before the date fixed for the election.