[Civ. No. 5385. Third Appellate District.—November 19, 1935.]

IRA R. MORRISON, Appellant, v. HENRY W. WHITE et al., Respondents.

J. Oscar Goldstein for Appellant.

Charles A. Walker, District Attorney, Coyle E. Bybee, William J. Locke and Louis Bartlett for Respondents.

PULLEN, P. J.—This is an action brought by plaintiff, a qualified elector of the city of Chico, against the county of Butte and its governing officials, to have declared null and void an election to create a municipal utility district under the provisions of an act generally known as the Municipal Utilities District Act of 1921. (Chap. 77, Gen. Laws of 1921, Stats. 1921, p. 245.)

The grounds which plaintiff and appellant urges for a nullification of the election are, first, that the special election called for the purpose of determining whether or not the utility district should be created was consolidated with the general August primary election held throughout the state on August 28, 1934, in violation of section 1 of Act 2264 of the General Laws of 1931 (Deering's Gen. Laws, Stats. 1931, p. 2197) pertaining to consolidation of elections, and secondly, that the special election was called and held without the authority of the board of supervisors of the county of Butte.

Section 1 of Act 2264 provides that no election shall be consolidated with the primary election held throughout the state in August of each even-numbered year. We do not believe that any consolidation of election was had in this case. It is true that the election officers, the polling places, the voting booths and the precincts were the same and were simultaneously employed in the two elections but it requires more than that to create a consolidation. No action was taken by the board of supervisors which can be construed as consolidating the elections, and separate orders were made by the board

calling the elections and appointing the officers thereof. A separate roster for the district election was provided at each polling place, and upon the signing of the roster, separate ballots of a distinctive color were given to the voter so signing the roster. A distinct and separate ballot box plainly marked was furnished for the district election and after each ballot was voted it was deposited by the proper officer in this special ballot box and a record made of the registered voter who had so voted, in a roster specially provided for the district election. After the polls were closed the district election ballot boxes were opened and the ballots separately canvassed and separate tabulations and tallies kept thereof. Thereafter the board of supervisors canvassed the returns of the special election and declared the result.

In the case of *City and County of San Francisco* v. *Collins,* 216 Cal. 187 [13 Pac. (2d) 912], a writ of mandate was sought to compel respondent as registrar of voters to place a certain municipal proposition upon the ballot. Proper steps had been taken by the board of supervisors therefor, and the election was called for August 30, 1932, on the same day as the August state-wide primary election. The objection raised by the registrar of voters was that the special election could not legally be consolidated with the August primary election. (Act 2264 of the Gen. Laws, *supra.*) Upon the hearing of the writ it was there said:

''A sufficient answer is that although the elections are to take place on the same date and in the same precincts, they have not been consolidated and are not confused. Separate provision is made for inspectors, judges of election, and clerks; ballots are to be used for the special election, as distinguished from voting machines at the primary election; and the returns are to be separately canvassed. The elections are obviously distinct and separate. (See *Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050] ; *Mead* v. *City of Los Angeles,* 185 Cal. 422 [197 Pac. 65].) ''

A recent case, *Vela* v. *Huberty,* 1 Cal. (2d) 466 [35 Pac. (2d) 531], was an application for a writ of mandate to compel respondent Huberty, as registrar of voters, to refrain from conducting a recall election. The election was called for August 28, 1934, on the same day the state August primary election was to be held. The court there said:

"While the provision of the act (Stats. 1931, p. 2196) prohibiting the consolidation of other elections with primary elections appears to be mandatory, the question is in a somewhat hazy condition, in view of the decisions of this court as to circumstances and conditions determining what is and what is not a consolidated election. This case narrows itself to the proposition whether the two elections have been actually consolidated. . . . The case is of that class, each one of which must be determined by the particular facts involved."

From the facts and the law applicable thereto we are satisfied that there was here no consolidation.

Respondent contends further that even if there were a consolidation it was nevertheless permissible under the provisions of the Municipal Utilities District Act which specific provisions they claim would govern rather than the general statutes pertaining to election matters, but we are not called upon here to determine that question, there being as a matter of fact no consolidation in the instant case.

As to the claim that the special election was called and held without the authority of the board of supervisors we also believe appellant is in error.

It is the contention of appellant that the election in question was not properly authorized by the board of supervisors in that the minutes authorizing the election fixing the date as of August 28th were not actually written into the journal of the board of supervisors until some time after September 1, 1934, and purported to show that on June 11, 1934, a resolution was passed by which an election was called on the matter of the proposed utility district. It appeared from testimony of the clerk of the board of supervisors that rough minutes of the board were kept by the clerk thereof and that from these rough minutes the entries in the journal of the board were thereafter made. The time the entries are actually made in the journal appears to us to be merely a clerical detail incidental to the calling and holding of the special election, and the transcribing of the minutes themselves were purely clerical and not jurisdictional.

Section 4039 of the Political Code, subdivision 1, provides: "The Board must cause to be kept: A Minute Book, in which shall be entered the daily proceedings had at all regular and special meetings and all orders and decisions made by them,

except such as are required to be recorded in the Ordinance Book.''

There is nothing in this provision which specifies when the detailed proceedings shall be entered nor when the records and minutes of the board must be signed by the chairman and clerk. The purpose of the signatures of the chairman and clerk is to identify such records as the minutes of the board, and the failure of the clerk and chairman to so sign does not invalidate a record as evidence of the action of the board. (7 Cal. Jur., p. 448, sec. 40.).

The journal of the board of supervisors as presented contains a full, true and complete record of all steps taken in calling, giving notice of and holding the special election for the establishing of Bidwell Municipal Utility District.

Appellant attempts by parol evidence to establish the date of the transcription of the proceedings into the journal. In the case of *Ex parte Young,* 154 Cal. 317 [97 Pac. 822, 22 L. R. A. (N. S.) 330], where certain members of the board of supervisors of the county submitted affidavits alleging facts contrary to the record of the proceedings of the board of supervisors, the court held that the record of the board could not be impeached in that manner, saying:

''The attempt is by the affidavits to contradict that record; a record of a public body which is expressly required by the statute to be kept in writing and to show by parol evidence that its recitals are untrue. That may not, however, be done. This attack on the record, it is to be observed, is being made in a collateral proceeding and extrinsic evidence is not admissible in such a proceeding to control or contradict the record.''

The record discloses that the election was legally called and conducted pursuant to the provisions of law applicable thereto. In *In re East Bay etc. Water Bonds,* 196 Cal. 725 [239 Pac. 38], the court said:

''It is thus apparent that the election itself is the controlling feature and the ultimate objective of the statute. If the election has been honestly and fairly conducted, and no one had been injured by the manner in which the preliminary steps leading thereto were taken, no reason exists for declaring it invalid. In the instant case there was no evidence offered on the part of defendants tending to show that they had been prejudicially affected by the procedure which had been adopted and followed leading up to the election. As

heretofore set forth, the findings by the court were to the effect that no error or irregularity or omission in the proceedings affected any of the substantial rights of the defendants; that they had full notice that the proposition for the issuance of the bonds would be submitted to the electors of the district at an election to be held on the said fourth day of November, 1924; and that the vote at such election was a full and fair expression of the will of the electors of the district upon said proposition."

The judgment is affirmed.

Thompson, J., and Plummer, J., concurred.