[Sac. No. 5184. In Bank.—March 29, 1938.]

WILLIAM W. WAHL, Respondent, v. A. R. WATERS et al., Appellants; JOHN WANNOP, Intervener and Respondent.

Coyle E. Bybee and Dion R. Holm for Appellants.

C. C. Carleton, Chief Attorney, Department of Public Works, Spencer Burroughs, Henry Holsinger, C. T. Waldo and Raymond S. J. Pianezzi, as *Amici Curiae,* on Behalf of Appellants.

Grayson Price, Elliott, Atkinson & Sitton for Respondent.

Devlin, Devlin & Diepenbrock for Intervener and Respondent.

EDMONDS, J.—Upon the petition of the respondent, who is a qualified elector of, and property owner residing within, the Bidwell Municipal Utility District the superior court ordered that a peremptory writ of mandate issue, requiring the defendants, constituting the board of directors of the district, to call an election upon the question of its dissolution. The appeal is from this judgment.

The district was formed at an election held in 1934 pursuant to the provisions of the Municipal Utilities District Act (Stats. 1921, p. 245; as amended. See 2 Deering's Gen. Laws, 1931 ed., p. 3650.) Its boundaries, which are not coterminous with those of any county or municipality, include approximately 400 square miles in the northern part of Butte County. The incorporated city of Chico and several unincorporated towns lie within it.

Apparently both the formation of the district and its acquisition of property have been vigorously opposed. The proceedings by which it was organized were challenged and finally upheld. (*Morrison* v. *White,* 10 Cal. App. (2d) 261 [52 Pac. (2d) 261] and Id., 10 Cal. App. (2d) 266 [52 Pac. (2d) 263].) In a later case the county auditor was required to deliver to the district a warrant for the amount of district

taxes which had been collected. (*Bidwell Mun. Utility Dist. v. Knott*, 16 Cal. App. (2d) 432 [60 Pac. (2d) 588].) The present proceeding is based upon a petition which was filed with the secretary of the·district on December 6, 1935. The respondents claim that under the provisions of the Municipal Utilities District Act, *supra*, upon the filing of this petition it became the duty of the directors of the district to call an election upon the question of dissolution.

The conditions under which the electors may require an election to be held are prescribed with particularity in section 28 of the act, which was added in 1933. (Stats. 1933, p. 2551; Deering's 1933 Supplement, p. 2161.) It provides: "The board of directors of any district which operates no works or properties, or whose exterior boundaries are coincident with the boundaries of a single city or town, may call an election at any time for the purpose of submitting to the qualified electors of said district the question of whether the district shall be dissolved; and the said board of directors must, upon the filing with the secretary of such district of a petition signed by qualified electors of said district, equal in number to not less than twenty-five per cent of the votes cast within said district at the general State election next preceding, asking that the question of dissolution of the district be submitted to a vote of the electors of the district, call such election . . . " (Sec. 28.) The respondent alleged that a petition signed by qualified electors in the district equal in number to more than 25 per cent of the votes cast within the district at the preceding general election and in the manner and form required by this act was filed with the secretary of the district, but that the directors failed and refused to call an election upon the question of the dissolution of the district although "said district has not at any time since the organization operated and does not now operate any works or properties". Another taxpayer was allowed to intervene upon a petition presenting the same allegations. The directors demurred to the respondent's petition upon both general and special grounds. After their demurrer was overruled, they answered, denying, among other allegations, not only that the petition had been signed by the number of qualified voters required by the act, but also that each of the persons who signed it had affixed his address, his occupation and the date of signing. They also denied the allegations of the petition that the district does

not operate works or properties and as a separate defense alleged that the district "does now own and operate and ever since the 3rd day of December, 1935, has owned and operated works and properties consisting of a water plant serving numerous consumers in the Town of Durham".

As a further and separate defense the appellants pleaded the pendency of another action brought against them by one F. L. Martenette, also a taxpayer and residing within the district, to compel the calling of an election upon the same question. It is alleged that the judgment entered in favor of the directors in the case first brought is conclusive of the issues in the present action.

Upon these issues the court found that the petition filed with the secretary of the district on December 6, 1935, complies in all respects with the requirements of the act and that the district "did not on or before the 6th day of December, 1935, operate any works or properties within the meaning of the law under which the District was organized". It, therefore, concluded that the respondent was entitled to judgment and ordered that a peremptory writ of *mandamus* issue forthwith commanding the appellants to call an election upon the question presented by the electors' petition.

The first contention of the appellants is that neither the petition of the respondent nor the one presented by the intervener states a cause of action against them and that their demurrer should have been sustained. They assert that the Municipal Utilities District Act, *supra*, makes no provision for the review by a court of the findings of the board of directors upon the sufficiency of an electors' petition; hence, such findings cannot be challenged except upon allegations of extrinsic or collateral fraud. In support of that position they cite *People* v. *Los Angeles*, 133 Cal. 338 [65 Pac. 749] ; *Fresholtz* v. *Board of Trustees*, 208 Cal. 502 [282 Pac. 501], and other cases where the power of a court to review the action of a board or council acting under similar statutes was passed upon. But the answer in the present case presents not only the determination of the board of directors that the electors' petition was insufficient, but also the facts upon which that conclusion was made. If the facts presented by the appellants and conceded to be true do not justify the board's determination, the rule contended for has no application.

The respondent filed his petition on February 20, 1936. The appellants' answer includes as an exhibit the certificate of the secretary of the district that the petition contains 2,998 signatures of which 506 do not comply with the requirements of the law. He also certified that 1163 of the signatures also appear on a petition filed with him on October 10, 1935, which also demanded an election upon the question of dissolution and was the basis for the action brought by F. L. Martenette against the appellants. Another determination made by the secretary was "that there are 2218 names appearing on said petition after which a purported precinct appears which precinct was not written by the person signing said petition".

It is admitted that the board of directors was not required to call an election unless the electors' petition contained 1982 valid signatures. The act does not prohibit an elector from signing more than one petition and the 1163 signatures which the secretary found to be on both petitions must be counted upon the petition which is the basis of the present controversy. The fact that two electors' petitions are on file at the same time does not warrant a refusal to act if either of them meets the statutory requirements. (*Morrow* v. *Board of Directors*, 219 Cal. 246 [26 Pac. (2d) 292].) Deducting the 506 challenged signatures from the total leaves 2,492 which is more than the required number unless the names of the 2,218 persons who did not write a precinct number cannot be considered.

The Municipal Utilities District Act does not require an elector signing a petition to place his precinct number thereon. It provides that an election upon the question of dissolution shall be governed by the general election laws of the state so far as they may be applicable. Section 1083a of the Political Code at one time provided that wherever any petition is required to be signed by qualified electors, each person "shall at the time of so signing . . . affix thereto the precinct" but since 1933, when this section was amended, the elector need only sign his name and "himself affix thereto his place of residence". Therefore, under the facts found by the secretary of the district, the petition bears the signatures of more qualified electors than are required by the act and the board of directors should have called the election

demanded if, on the day it was filed, the district did not operate any works or properties.

■ Although the appellants claim that upon the filing of the electors' petition it was within their exclusive province to determine, as a question of fact, whether the district was operating works or properties, their principal contention is that the evidence is insufficient to support the findings. In support of the first proposition there is evidence that on December 4, 1935, the board of directors adopted a resolution establishing a schedule of rates for the sale and service of water by the district. This resolution includes in its preamble the statement that the district "owns and operates certain water works and properties known as Durham plant No. 1 for sale and service of water". The electors' petition was filed with the secretary of the district on December 6, 1935. At a meeting of the board of directors held on January 4, 1936, the secretary reported the filing of the petition "and it was decided that no action be taken because the District is now operating works and properties". The present action was commenced February 20, 1936. The following day the board of directors adopted another resolution reciting that prior to and on December 7, 1935, the district was operating works and properties. However, the adoption of either of these resolutions is not a conclusive determination of the question beyond the reach of judicial review if in fact the district was operating no works or properties at the time the electors presented their demand. If this were not the rule the election provisions of the act would be ineffective.

Upon the merits of the controversy the directors say that the district is the victim of forced interest and motives of a group which is not representative of the people. On the other hand, although the appellants may be thoroughly conscientious in their belief that the people of the Bidwell district should have municipal ownership of public utilities, until the district is actually operating works or properties its continuance lies within the control of the electors.

■ The minutes of the board of directors show that in September, 1935, the appellants learned of the movement to demand an election for the dissolution of the district. Up to that time they had been considering ways and means of acquiring a system for the distribution of electricity. But in the language of the respondent, they then became "water conscious". Negotiations were undertaken for a lease of a

water system at Durham then in private ownership. The directors of the district and the owners of the plant agreed on the terms of such a lease and an application was made to the railroad commission for permission to make the transfer. This application was subsequently withdrawn. Afterward the plant which the trial court found to be incapable of practical operation was built.

This was not a ''plant'' within the meaning of the statute. All of the evidence supports the finding of the trial court that upon the date when the electors' petition was filed, this plant was incapable of practical operation as a revenue producing utility. And this court cannot take judicial notice of the fact, if it be the fact, that the original plant has now been enlarged and, with another system which has been leased, supplies the entire town of Durham with water. The sole question for decision in this case is whether the appellants were required to call an election under the facts existing in December, 1935. What has since been done cannot be here considered on appeal. Hence the order made by the railroad commission on October 7, 1937, is immaterial, and the subsequent motion of the appellants for leave to file a certified copy of it as part of the record upon this appeal must be denied.

Upon the argument of the appeal in this court, the appellants contended that the questions involved in this case have become moot because the district is now operating works and properties. ''Ordinarily a writ of mandate will not issue to compel the performance of an official act if, when the writ is applied for, the time limited by law for action has expired; but this rule does not apply in a case like the one at bar, where the requirements and purpose of the law have been disregarded and defeated, of their own volition, by the very officers intrusted with the performance of a public duty which was clearly obligatory.'' (*Conn* v. *City Council*, 17 Cal. App. 705 [121 Pac. 714].)

The Water Project Authority of the State of California has appeared herein as *amicus curiae*, urging a liberal construction of the phrase ''operates no works or properties'' in the interest of the Central Valley Project. It is argued that state agencies which form an integral part of the plan of that project should be fostered and encouraged in the interest of public welfare and policy of the state as declared by the legislature. But the legislature has also given the

electors residing in a utility district the right under certain conditions to determine whether a district shall continue in existence. The language of the statute is clear and unambiguous; hence there is no justification for any construction of it.

The judgment in the action brought by F. L. Martenette against the directors was not a bar to the present suit. The first case was brought by another taxpayer and presented issues concerning the status of the district on October 10, 1935, and the sufficiency of the petition presented by the electors on that day. The present action is based upon different facts and a petition presented at a later date.

The judgment is affirmed.

Waste, C. J., Seawell, J., Houser, J., Shenk, J., Curtis, J., and Langdon, J., concurred.