STATE, EX REL. PAUL S. TOPPING, APPELLEE, V. JAMES D. HOUSTON ET AL., APPELLANTS.

FILED OCTOBER 17, 1913.   No. 18,157.

1. Courts: SPECIAL TRIBUNALS: FINDINGS: CONCLUSIVENESS. Where a special tribunal is created by a statute to ascertain and declare the existence or nonexistence of certain facts, and no provision is made for an appeal or review thereof by the courts, the action of the tribunal, in the absence of fraud or mistake, is.final.

2. Municipal Corporations: RECALL OF OFFICERS: PETITION: REVIEW. Under section 36, art. III, ch. 14a, Comp. St. 1911, containing the provisions for the recall of municipal officers in cities which have adopted the commission form of government, the city clerk is required to ascertain and declare whether the requisite number of qualified signers have signed the petition for a recall election, and, in the absence of fraud or mistake, his determination thereof is not subject to review.

3. ——: ——: ——: DUTY OF COUNCIL. If no fraud or mistake appears, and the petition is regular in form and is accompanied by the proper certificate of the city clerk, the city council must proceed under the statute to convene and fix a date for the election.

4. Officers: ABOLITION OF OFFICE: POWER OF LEGISLATURE. An office created by the legislature may, in the absence of any constitutional restrictions, be abolished by that body, and the incumbent of such office has no property interest in it of which he may not be deprived.

5. ——: TERM OF OFFICE: POWER OF LEGISLATURE. In the creation of an office by the legislature, it may impose such limitations and conditions as to its continuance and termination as it sees fit, and in such a case the incumbent takes the office subject to the conditions imposed.

6. Municipal Corporations: REMOVAL OF OFFICERS: NATURE OF POWER. The power granted to electors of a city to remove certain public officers is political in its nature, and is not the exercise of any judicial function.

7. ——: RECALL OF OFFICERS: PETITION: SUFFICIENCY. The provision of the statute that a recall petition "shall contain a general statement of the grounds upon which the removal is sought" does not require the petition to contain specific charges of misconduct such as would be required in a judicial inquiry, but its purpose is to furnish information to the electors upon which a political and not a legal issue may be raised at the election.

APPEAL from the district court for Otoe county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*Andrew P. Moran* and *John C. Watson*, for appellants.

*O. G. Leidigh* and *Paul S. Topping, contra.*

LETTON, J.

This is an appeal from the allowance of a peremptory writ of mandamus commanding the respondents James D. Houston, James A. Richardson, and Robert E. Hawley, members of the city council of Nebraska City, to convene as such city council within ten days and to order an election to be held on a date then fixed for "the purpose of submitting to the electors of said city the proposition of

recalling and removing said James D. Houston, present mayor and member of the council of said city, and electing as his successor thereto at such election Paul S. Topping, a legal voter of said city."

In January, 1912, the city of Nebraska City adopted the commission plan of government. The respondents were in April of that year elected as mayor and councilmen, respectively, their terms of office expiring April, 1914. On the 10th day of May, 1913, there was filed with the city clerk of Nebraska City a petition for the recall of Mr. Houston. The city clerk, as provided by the statute, made an examination of the names signed to the petition and certified that he had "carefully examined the names signed to the attached petition, being a petition for the recall of Mayor Houston, enough of them being legal voters equal to 30 per cent. of the highest vote cast at the general election of Nebraska City, held the 2d day of April, 1912." The city council refused to call the election, for the reasons that the petition for the recall and the certificate of the city clerk thereto were not sufficient. Whereupon relator brought this action praying for a writ of mandamus. Objection was made to the issuance of the writ by Andrew P. Moran as *amicus curiæ*, which was overruled. A demurrer was then filed, which was also overruled. Afterwards an amended answer was filed, upon which the case was tried, and after a hearing the writ was allowed to issue.

The respondents make eight assignments of error: First, that the court erred in not sustaining the objections; second, that it erred in not sustaining the demurrer; the third and remaining assignments may be grouped, and in substance amount to the complaint that the court erred in finding the issues as it did and granting the peremptory writ. Applying the rule that this court will ordinarily consider only the points argued, we omit reference to several of the errors assigned.

There are really only two points presented for our consideration: First, did the petition contain the requisite

number of names? and, second, did it contain a general statement of the grounds upon which the removal is sought? If the number of qualified signers required by the statute appended their names thereto, and if it contained a general statement of the grounds upon which the removal is sought, the city council had no discretion in the premises, but it became its duty under the provisions of the statute to call an election within the time specified in the statute.

The inquiry as to whether the petition contains a sufficient number of names must be determined by the language of the statute. Section 36, art. III, ch. 14a, Comp. St. 1911, provides: "The procedure to accomplish the removal of any incumbent of such office shall be as follows: A petition signed by such electors equal in number to at least thirty per centum of the highest vote cast at the last preceding general city election, demanding an election of a successor to the person sought to be removed and naming the candidate or candidates proposed for election to succeed him, shall be filed with the city clerk, which petition shall contain a general statement of the grounds upon which the removal is sought. Within ten days from the date of filing such petition, the city clerk shall examine it and from the voters' register, if the petition be filed in any city where registration laws are in force, or, if not, then from such source as may be available to such clerk, ascertain whether or not said petition is signed by the requisite number of qualified electors, and, if necessary, the council shall allow such clerk extra help for that purpose, and the clerk shall attach to said petition his certificate showing the result of such examination, and if the clerk's certificate to such petition shows that it is insufficient in point of numbers signed, it may be amended within ten days from the date of such clerk's certificate by the filing of a supplemental petition signed and sworn to as in the case of the original petition, and the clerk shall, within ten days after such supplemental petition be filed, make a like examination of the supple-

mental petition, and if the certificate shall show the supplemental petition, together with the original petition, to contain the requisite number of signatures, the clerk shall submit such original petition, and supplement, together with his certificates, without delay, to the council, and the council shall order and fix, without delay, a date for holding an election, which date shall not be less than thirty nor more than sixty days from the date of the clerk's certificate to the council showing the petition sufficient."

By these provisions the clerk is made the custodian of the authority to determine the sufficiency of the petition. The general rule is that, where any officer or board is vested with authority to determine a question concerned with the administration of his or its duties, his or its decision, if made in good faith, is decisive of the point, in the absence of fraud or mistake. *Smiley v. Sampson*, 1 Neb. 56; *Tyson v. Washington County*, 78 Neb. 211. We have so held with relation to the action of the board of county commissioners in a number of matters where the statute makes that the deciding body. *Dodge County v. Acom*, 61 Neb. 376; *Andrews v. Lillian Irrigation District*, 66 Neb. 461; *Campbell v. Youngson*, 80 Neb. 322; *Lancaster County v. Lincoln Auditorium Ass'n*, 87 Neb. 87. And we see no reason why the same doctrine does not apply with regard to the action of a city clerk in determining the sufficiency of such a petition. This seems to be the view taken respecting like provisions in other recall statutes. *Good v. Common Council*, 5 Cal. App. 265; *Locher v. Walsh*, 17 Cal. App. 727; *Davenport v. City of Los Angeles*, 146 Cal. 508.

In the present case the city clerk was examined and cross-examined as to his method of ascertaining that the persons signing the petition were qualified electors of the city. Objections were made to some of the questions propounded upon cross-examination, which under the state of the pleadings we think were rightly sustained. There is neither pleading nor proof that any persons

32

whose names are signed to the petition were not qualified electors or that any fraud had been perpetrated or mistake made by the city clerk in making his determination. There can be no question but that when the petition was presented with the clerk's certificate attached, showing that it had been signed by the requisite number of qualified electors, and no fraud, bad faith or mistake appeared, it was the duty of the city council to call the election; provided, of course, that the petition was sufficient in other respects.

This brings us to the second point in the case. The statute requires that the petition "shall contain a general statement of the grounds upon which the removal is sought." The grounds stated in the petition are: "Said Houston, in attempting to discharge the duties and trusts of said office, is grossly extravagant with the public funds of said city; manifestly partial, prejudicial and malevolent in exercising the prerogatives of said office; and because of his nonfeasance and malexecution of the duties of said office; and because of his obvious incompatibility of temperament to discharge the duties of said office economically and to the best interest of the citizens and taxpayers of said city of Nebraska City." The respondents assert that the petition fails to give a general statement of the grounds, as the statute requires, upon which the removal is sought, but only states conclusions of law. As to the first ground alleged, it is said that it was impossible that the mayor could spend money extravagantly in his individual capacity; that appropriations can only be made by a majority of the council; that some other member must have voted with him in order to permit the careless and extravagant expenditure of money; and that as a natural consequence the petition in this respect did not set forth sufficient grounds for recall.

As to the other grounds set forth, it is said that they merely state conclusions of law, and that the relator should be held to a strict compliance with the rules of pleading because he is attempting to remove and recall

a duly elected officer of a municipality and place himself in that office for the unexpired term, and, also, that the charges in the latter portion of the statement are "absolutely meaningless." It is further argued that a recall does not constitute due process of law, since "it condemns without hearing, proceeds without inquiry, and renders judgment without trial," and that, since a bill of attainder is defined as a legislative act which inflicts punishment without judicial trial, the act of recall, whether it emanates from the organic or the statute law, is neither more nor less than a bill of attainder, and therefore violates both the constitution of the United States and the constitution of the state of Nebraska, and that the provisions for the initiative, referendum and recall violate that part of the constitution of the United States which guarantees every state in the Union a republican form of government.

These contentions raise the question as to the intention of the lawmakers when they required "a general statement of the grounds upon which the removal is sought." Was it their intention that the election should be of the nature of a trial or hearing, for which sufficient charges must be preferred showing cause why the officer should be removed, and as to which petition the usual rules with respect to specific charges, applied in impeachment or other proceedings to remove officers for cause, should apply, as respondents contend, or was the object of the statute to make the officer liable to be removed and his term of office determined by the electors at any time when the required majority, proceeding under the statute, should believe that it was detrimental to the best interests of the city to continue him in office until the end of the term for which he was elected?

We find it unnecessary to consider respondents' argument that the provisions for the initiative and referendum are violative of the constitution of the United States. It may be said in passing, however, that in *Kiernan v. Portland,* 57 Or. 454, the supreme court of Oregon took the

contrary view, and that in the *Pacific States Telephone
& Telegraph Co. v. Oregon*, 223 U. S. 118, 32 Sup. Ct. Rep.
224, it was expressly decided by the supreme court of the
United States that whether or not a state has ceased to
be republican in form, within the meaning of the guarantee
in the constitution of the United States (article IV, sec.
4), because of its adoption of the initiative-and referen-
dum is a political and governmental question which is
solely for congress to determine. Is the exercise of the
power of recall by the electors a judicial act or is it legis-
lative in character? Some of our former decisions throw
light upon this question. We have held a number of times
that an office created by the legislature may be abolished
by that body, and that the incumbent of such an office has
no property interest in it the deprival of which is pro-
hibited by the constitution. *Douglas County v. Timme*,
32 Neb. 272; *State v. Stewart*, 52 Neb. 243; *Dinsmore v.
State*, 61 Neb. 418. And, also, that when the power has
been given the governor to remove certain public officers
that power is administrative in its nature, and not a
judicial function, and an order made in the proper exer-
cise of the authority will not be reviewed by the courts.
*State v. Hay*, 45 Neb. 321.

In *State v. Somers*, 35 Neb. 322, it appeared that the
charter of the city of Omaha gave the mayor power to ap-
point a commissioner of health, and provided, further:
"All officers appointed by the mayor and confirmed by the
council shall hold the office to which they may be ap-
pointed until the end of the mayor's term of office, and
until their successors are appointed and qualified, unless
sooner removed." It was held: "Where the statute au-
thorizing the appointment contains a reservation of the
right of removal without preferring charges, and this
power is exercised by the removal of the incumbent and
the appointment of another in his stead, the right of the
former to the office will cease." The court also said:
"Where a person is appointed to an office for a definite
period and there is a provision that to obtain his removal

charges must be preferred against him, he cannot be removed unless such charges are made; but this rule does not apply to a case where the power of removal is retained and no charges are required."

In a case arising in California (*In re Carter,* 141 Cal. 316) the facts were that the mayor of San Diego removed the fire commissioner of the city, under a charter provision giving the mayor power to remove any person appointed by him by the giving of notice to the person removed, and stating the cause; and it was held that the officer had no property right in the office, and that "in creating an office the government can impose such limitations and conditions with respect to its duration and termination as may be deemed best, and that in such a case the incumbent takes the office subject to the conditions which accompany it." It was also held that proceedings under such a statute were not of a judicial character. A large number of cases are cited in the opinion. See, also, *Mial v. Ellington,* 134 N. Car. 131, 65 L. R. A. 697, and cases cited in the opinion and note.

The process of removal under the recall statutes did not originate in this state, and the legislature no doubt had in mind the development of the recall idea, and the decisions that had been made in other states upon substantially similar statutes. A few cases from other states will be examined.

*Hilzinger v. Gillman,* 56 Wash. 228, was an action to enjoin the city clerk from certifying to the city council that a certain recall petition was sufficient and in conformity with the provisions of the charter. A demurrer to the petition was sustained, the action dismissed, and an appeal taken from such judgment. The court said, speaking of section 281 of the charter, which is substantially identical with the Nebraska statute: "Section 281 contemplates a recall of the officer at any time that his official conduct is not responsive to the wish or will of a majority of the electors in his precinct or ward. Whilst this section provides that the reason for the recall shall be stated in the petition,

the charter does not provide that any specific reason shall be necessary or controlling. The whole scheme or system of the charter makes it apparent that the right of recall of elective officers was reserved to the people, to be exercised at any time the public interest was thought to require it. * * * His successor is elected and inducted into office under the recall provision only upon the failure of the incumbent to secure an indorsement of his stewardship by a majority of the electorate. Like the British ministry, an elective officer under the charter is at all times answerable to the people for a failure to meet their approval on measures of public policy."

In *Conn v. City Council*, 17 Cal. App. 705, the petition for recall alleged, "that the six councilmen sought to be removed had been guilty of (1) malfeasance in office; (2) that they had been parties to a political agreement by which the office of city engineer was traded in consideration of other appointments; (3) that such political trafficking was contrary to the spirit of the charter and detrimental to the public interest; (4) that the councilmen had united in denying the petition of a majority of qualified electors in matters of public policy;" and, finally, that the signers of the petition for the recall no longer desire the services of these particular councilmen. The statute required that the petition shall contain "a general statement of the grounds for which the removal is sought." Substantially the same argument as to defective statement of cause was made as in this case, but the court said: "It is a mistaken theory of counsel for the defendant that the charter provisions of the city of Richmond contemplate and require that a recall petition should be drawn with a due regard for the technical niceties and refinements of the rules of law which pertain to the preparation of pleadings in civil and criminal cases;" and, further: "Manifestly, the purpose of the charter in providing for a recall election is to give the people of the municipality the right to cut short the official term of every elective officer whose conduct in office is for any cause unsatisfactory or

distasteful to the body of the community. * * * The petitioners are only required to state generally their grounds or reasons for demanding the removal of the obnoxious officer, for the obvious and only purpose, it seems to us, of furnishing information to the people of the community upon which a political issue rather than an issue at law may be raised and determined."

It has been argued that absurd reasons may be stated in the petition, and that an officer may be called upon to defend his position against frivolous attacks. Doubtless the provision requiring 30 per cent. of the electors to sign the petition before the council are compelled to act was designed to avoid such a contingency. The legislature apparently assumed that nearly one-third of the electorate would not entail upon the taxpayers the cost of an election, unless the charges made approved themselves to their understanding and they were seriously dissatisfied with the services of the incumbent of the office.

The idea of removing public officers at the discretion of the appointing power, as we have seen, is not a novel one. The concept that this may be done at the direct instance and upon the motion of the electors, the ultimate source of power in a republic, only carries back the power of removal one step farther. If it is not obnoxious to the constitution to allow an elected officer to remove an appointed one, how can it be a violation of that law to allow it to be done by the people themselves. They are no doubt better qualified to determine the capability and efficiency of their administrative agent after giving him an opportunity to perform the duties of the office than they were when they first selected him to fill the position. The officer takes the position for a fixed term, with the condition attached that he is subject to removal whenever his services are not desired by the number of his fellow citizens named in the statute. The policy of the recall may be wise or it may be vicious in its results. We express no opinion as to its wisdom with respect to the removal of administrative officers. If the people of the state find, after a trial of the

experiment, that the provisions of the statute lead to
capable officials being vexed with petitions for their re-
call, based upon mere insinuations or upon frivolous
grounds, or because they are performing their duty and
enforcing the law, as they are bound to do by their oath
of office, or lead without good and sufficient reason to
frequent, costly, and unnecessary elections, they have the
power through their legislature to amend the statute so
as to protect honest and courageous officials. This may
be done by increasing the number of names required to be
signed to the election petition or by requiring specific
charges of misconduct to be made therein, and thus al-
lowing the officer attacked to meet the charges made or by
adding both of these provisions to the recall feature of the
law. Accusations of wrongful acts attributed to an offi-
cer merely by innuendo or by vague generalities, as may
now be done, are often the most difficult to refute by proof
and the hardest to meet by argument. Whether the best
public policy is subserved by the statute in its present
form is for the legislature to consider, and not for the
court, which must declare the law as it finds it.

We find no error in the record, and the judgment of the
district court is·

AFFIRMED.