WALLACE *v.* TRIPP.

1. ELECTIONS—RIGHT OF RECALL.
   The right of recall of all elective officers, except judges, is a fundamental right reserved to the people of this State by the Constitution (Const 1908, art 3, § 8).

2. SAME—RIGHT OF RECALL—RESTRICTIONS.
   The right to recall an elective officer is not limited, either by Constitution or statute, to situations wherein facts could be alleged on the petition which constituted nonfeasance, misfeasance, or malfeasance (Const 1908, art 3, § 8; CLS 1956, §§ 168.951–168.976).

3. SAME—RECALL—PETITIONS—JUSTIFICATION.
   Statutory requirements that reasons for the recall of an elective officer be printed on the petition for the recall and on the ballot in no more than 200 words and for the officer's justification of his conduct in office printed within the same limit indicated a statutory intent to have the issue over the conduct of the officer informatively presented to the prospective petition signers and to the recall voters and thus guarded "against abuses of the elective franchise" (Const 1908, art 3, § 8; CLS 1956, §§ 168.952, 168.966).

4. SAME—RECALL.
   "Recall" is the right or procedure by which a public official may be removed from office, before the end of his term of office, by a vote of the people to be taken on the filing of a petition signed by a required number of qualified voters.

5. SAME—RECALL—REMEDY.
   The principle underlying the recall of public officers is to provide an effective and speedy remedy to remove an official who is not

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 28 Am Jur, Initiative, Referendum and Recall § 53.
[2] 28 Am Jur, Initiative, Referendum and Recall § 58.
[3, 7] 28 Am Jur, Initiative, Referendum and Recall § 60.
[4] 28 Am Jur, Initiative, Referendum and Recall § 51.
[8] 11 Am Jur, Constitutional Law § 81.
[9] 34 Am Jur, Mandamus § 155.
[10] 35 Am Jur, Mandamus § 393.

giving satisfaction, regardless of whether or not he is discharging his full duty to the best of his ability and as his conscience dictates.

6. SAME—SUFFICIENCY OF REASONS IN RECALL PETITION.
   The sufficiency of reasons in a recall petition is for the determination of the electorate rather than the courts.

7. SAME—RECALL—STATEMENT OF REASONS.
   The Constitution and statute require a clear statement of reasons for recall based upon an act or acts in the course of conduct in office of the officer whose recall is sought, a right not otherwise restricted as to its exercise by the people (Const 1908, art 3, § 8; CLS 1956, §§ 168.952, 168.966).

8. CONSTITUTIONAL LAW—LEGISLATURE—SUPREME COURT—STATUTES.
   The legislative acceptance of the Supreme Court's previous interpretation of a statute is irrelevant when the Supreme Court is construing the Constitution itself.

9. MANDAMUS—RECALL PETITIONS—SCHOOL BOARD MEMBERS—DISMISSAL OF SUPERINTENDENT.
   Circuit judge properly refused writs of mandamus to compel officers of school district's board of education to dismiss recall petitions of various members for dismissal of school superintendent, it being unnecessary to allege facts constituting nonfeasance, misfeasance, or malfeasance in office (Const 1908, art 3, § 8; CLS 1956, §§ 168.952, 168.966).

10. COSTS—PUBLIC QUESTION—SUFFICIENCY OF RECALL PETITION.
    No costs are allowed in mandamus proceeding wherein sufficiency of recall petitions as to members of school district's board of education was questioned, a public question being involved (Const 1908, art 3, § 8; CLS 1956, §§ 168.952, 168.966).

KELLY, BLACK, and KAVANAGH, JJ., dissenting.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted October 13, 1959. (Calendar No. 48,213.) Decided February 25, 1960.

Two actions in mandamus, one by Mildred Wallace and one by George M. Telfer and Harry M. Smith, both against Robert Tripp and others, as president and members of a Richland community school district, to compel them to dismiss petition and counter-

mand order for a recall election. Donald G. Wheeler and others constituting a committee of electors intervened as parties defendant. Cases consolidated. Writs denied. Plaintiffs appeal. Affirmed.

*Schaberg & Schaberg,* for plaintiffs.

*Ford, Kriekard & Brown (Garry E. Brown,* of counsel), for defendant intervenors.

Kelly, J. (*dissenting*). Appellants, Wallace, Telfer and Smith, are 3 members of the 5-member board of education of Richland Community School District No. 46, counties of Kalamazoo and Barry, Michigan, which school district includes all of Richland township and parts of 5 other townships. Defendant Tripp is also a member and president of said board of education.

Petitions containing the necessary statutory number of signatures, namely, "25% of the number of votes cast for candidates for the office of governor at the last preceding general election in the electoral district of the official sought to be recalled" (CLS 1956, § 168.955 [Stat Ann 1956 Rev § 6.1955]), were filed with defendant Tripp asking for the recall of appellants.

The reasons stated for the recall of appellant Mildred Wallace, who was secretary of said board of education, were as follows:

"She has improperly exercised the prerogative of her office by voting with Smith and Telfer to refuse to renew Superintendent Nykerk's contract after having led him to believe a contract would be offered, contrary not only to the board's obligation to Nykerk but also contrary to its obligation to uphold and follow a policy commitment previously given to the faculty relative to renewal of contracts, being the principal proponent of such action, which action was arbitrary, capricious, without justification and

without regard for the welfare of the school district, thereby causing it harm, to wit:

"(a) Destroyed the integrity of the board of education as the official representative of the district in contracting with faculty and possibly subjecting the district to Michigan Education Association sanctions;

"(b) Subjected the district to loss of 88% of its faculty for coming year, which loss will result in inferior instruction or additional cost to district;

"(c) Exposed the district to legal liability to Nykerk arising out of failure to renew his contract.

"She has improperly exercised the prerogative of her office in voting with Smith and Telfer to refuse to adopt an acceptable solution to the school district's administrative crisis as set forth above, contrary to the best interests and welfare of said school district.

"She has improperly exercised the prerogative of her office and her duty to act in the best interest of said school district by attempting to effect an unjust, unfair and improper agreement with Nykerk, to wit: she requested Nykerk to guarantee to refuse a contract for the coming year as a condition to the granting of such contract to Nykerk."

The reasons stated for the recall of appellant Smith and Telfer were the same as those given in the recall petition of appellant Wallace, except for the difference in names, and, in the first reason assigned the words "being the principal proponent of such action" were omitted. Also, the last reason assigned in the Wallace recall petition was omitted from the other 2 petitions.

Appellants filed petitions with the circuit court for the county of Kalamazoo, praying for writs of mandamus directing defendant Tripp and Anthony Stamm, acting secretary, to dismiss the petitions for

recall and to countermand and set aside the order calling an election.

Appellants based their prayer for mandamus on the grounds that the petitions did not clearly state reasons which would constitute misfeasance, malfeasance, or nonfeasance in office.

Upon completion of arguments, the court rendered its opinion and entered an order denying the relief sought by appellants.

The question presented in this appeal is: Must petitions for recall clearly state facts which would constitute misfeasance, malfeasance, or nonfeasance? The constitutional provision pertinent to this question is article 3, § 8, Constitution of 1908, which provides:

"Laws shall be passed to preserve the purity of elections and guard against abuses of the elective franchise, and to provide for the recall of all elective officers, except judges of courts of record and courts of like jurisdiction upon petition of 25 per centum of the number of electors who voted at the preceding election for the office of governor in their respective electoral districts."

The statute enacted pursuant to the foregoing constitutional provision was PA 1913, No 325 (CL 1948, § 201.101 *et seq.* [Stat Ann § 6.771 *et seq.*]). The particular section dealing with the recall petitions of the present law (PA 1954, No 116), being section 952 thereof (CLS 1956, § 168.952 [Stat Ann 1956 Rev § 6.1952]), provides in part:

"All petitions for the recall of an officer shall be in substantially the following form, shall be printed or typewritten and shall state clearly the reason or reasons for said demand."

A petition similar to the instant petition was considered in *Newberg* v. *Donnelly*, 235 Mich 531. The petition stated that Newberg, without just cause, re-

fused to rehire a schoolteacher, and this Court commented upon the statutory provision as follows (pp 534, 535):

"It provides that the petition 'shall state clearly the reason or reasons' for recall. This statement must be such as will furnish information to the electors on which they may form a judgment when called upon to vote. The reason or reasons assigned must be based on some act or failure to act which, in the absence of a sufficient justification, would warrant the recall.

"(a) The first reason assigned is that plaintiff refused to hire a teacher who had been theretofore employed in the district. The statement that the electors and parents desired her retention is a mere conclusion. Its truth could be determined only by a canvass of the district. The board consists of 3 members. Upon them the law imposes the duty to hire teachers. The action of any 2 of them is binding upon the district. The contract entered into by them is not subject to recall. Unless it be said that an officer of the district must seek the opinion of the electors and be guided by the wishes of a majority thereof in selecting a teacher, it is apparent that his action, without doing so, is no sufficient reason for his recall. The law does not permit the electors at their annual meeting to hire a teacher. They might by resolution indicate their choice. But the duty rests upon the board, and their performance of it is not subject to a review by the electors, and cannot be made the basis of a reason for recall under the statute."

There have been only 3 additional Michigan Supreme Court decisions dealing with the question of adequacy of recall petitions, and all 3 have held that the petition must clearly state facts which would constitute nonfeasance, misfeasance, or malfeasance.[*]

---

[*] *People, ex rel. Elliot,* v. *O'Hara,* 246 Mich 312; *Amberg* v. *Welsh,* 325 Mich 285; *Eaton* v. *Baker,* 334 Mich 521.

After holding that the petitions did not clearly set forth facts which would constitute nonfeasance, misfeasance, or malfeasance, the trial court commented on this Court's failure to give consideration to the constitutional question in the 4 cases cited above, and said:

"That brings me to the last question and that is whether or not our Supreme Court has ever ruled upon the constitutionality of the added requirement that the Court itself has placed upon the Constitution and the statute, namely, that the reasons must allege misfeasance, malfeasance, or nonfeasance. If the Court has passed upon that question, I will be the first to follow that precedent and hold that such is required and that such requirement is constitutional. * * * I am convinced that our Supreme Court has never passed directly upon the constitutional question. I have considerable doubt, though I have no way of knowing, it is merely intuition, but I seriously doubt that the question has ever been raised. I can find nothing in the 4 cases to indicate that it was ever brought to the attention of the Court. The question, therefore, is: Is this a case of first impression? * * * I can find absolutely nothing in these opinions which indicates that the Court was ever asked if it was proper to add the requirement to the Constitution and the statute. The Court did it in *Newberg* v. *Donnelly,* and the Court has followed it in 3 cases since."

We agree with the trial court's conclusion that the petitions did not state reasons constituting nonfeasance, misfeasance, or malfeasance, but disagree with the court's conclusion that "to require a court decision on the question of whether or not the reasons constitute misfeasance, malfeasance, or nonfeasance is and would be a definite limitation upon the right of the people to recall and would be unconstitutional" and that "this is a case of first impression."

If the trial court's interpretation of the Constitution and statute were adopted, any fact or facts set forth in the petition would justify a recall election.

The petitions fail to meet statutory requirements, and the trial court should be directed to issue an order directing defendants to dismiss said petitions and to countermand and set aside the order calling an election to recall appellants. No costs, a public question being involved.

EDWARDS, J. The facts in this matter are simple. Petitions for an election to recall 3 members of the school board of the Richland Community School District No. 46 (appellants herein) were filed with the required number of signatures. It is conceded that the petitions complied with constitutional and statutory requirements in all respects except as to reasons stated thereon for recall.

Essentially, the reason given on the petitions for recall was that defendants had exercised their authority as a majority of the school board by discharging the school superintendent, and that such discharge was improper and detrimental to the school district.

Appellants thereupon, in 2 actions which were consolidated for trial, sought a writ of mandamus in Kalamazoo circuit court to direct defendants, the president and acting secretary of the school district, to countermand the order for a recall election and to dismiss the petitions. They claimed the petitions did not clearly state reasons which constituted misfeasance, malfeasance, or nonfeasance in office.

The circuit judge denied the writs sought, and appellants seek relief from his denial in this Court.

The right of recall is a fundamental right reserved to the people of this State by their Constitution:

"Laws shall be passed to preserve the purity of elections and guard against abuses of the elective franchise, and to provide for the recall of all elective officers, except judges of courts of record and courts of like jurisdiction upon petition of 25 per centum of the number of electors who voted at the preceding election for the office of governor in their respective electoral districts." Const (1908), art 3, § 8.

It is obvious at the start that the constitutional provision does not limit the right of recall to situations wherein facts could be alleged on the petition which constituted "nonfeasance, misfeasance, or malfeasance."*

Nor may any such limitation be found in the recall statute which was adopted pursuant to the constitutional mandate. See CLS 1956, §§ 168.951–168.976 (Stat Ann 1956 Rev and Stat Ann 1957 Cum Supp §§ 6.1951–6.1976). The statutory language did spell out the form of the petition to be filed, and did require that it "shall state clearly the reason or reasons for said demand" (*i.e.,* the demand for recall). CLS 1956, § 168.952 (Stat Ann 1956 Rev § 6.1952).

The recall statute also provides for the statement of reasons for recall to be printed on the ballot in no more than 200 words, and for "the officer's justification of his conduct in office" to be printed within the same limit. CLS 1956, § 168.966 (Stat Ann 1956 Rev § 6.1966).

Thus it is clear that the statutory intent was to have the issue over the conduct of the officer informatively presented to both prospective petition signers and recall voters.

No suggestion is made to us that the statutory language itself is inconsistent with the constitutional mandate, and certainly the clear statement of the reasons for recall on the petition and both reasons

---

* See *People, ex rel. Elliot,* v. *O'Hara,* 246 Mich 312, 314.

and justification on the ballot could be regarded as guarding "against abuses of the elective franchise."

The requirement of showing facts on the petition for recall constituting "nonfeasance, misfeasance, or malfeasance" was a requirement added entirely by judicial decision. In 1926, in *Newberg* v. *Donnelly,* 235 Mich 531, this Court upheld the constitutionality of the statutory language referred to, and read into it additional limitations (pp 534, 535):

"The reason or reasons assigned must be based on some act or failure to act which, in the absence of a sufficient justification, would warrant the recall."

Without even noting that both the Constitution and the statute clearly indicated that the voters had the power to determine what reasons would warrant the recall, the Court itself proceeded to hold certain acts described on the petition before it as not "a sufficient justification." We cannot find any constitutional warrant for this assumption of a power clearly reserved by the Constitution to the people.

This case was followed in 3 subsequent cases where, however, in each instance the Court found the justification sufficient. *People, ex rel. Elliot,* v. *O'Hara,* 246 Mich 312; *Amberg* v. *Welsh,* 325 Mich 285; *Eaton* v. *Baker,* 334 Mich 521.

As far as the opinions in these cases reveal, the Court never subsequently considered the question as to whether it had by inadvertence imposed a judicial restriction upon a basic right constitutionally reserved in full to the people. In this case, the question is squarely before us, however, and we feel bound to decide it.

We have noted that the constitutional and statutory provisions make no reference to restricting recall to situations wherein nonfeasance, misfeasance, or malfeasance was charged. The word "recall" as

employed in each has, however, a general meaning. Webster's Unabridged defines it thus:

"The right or procedure by which a public official, commonly a legislative or executive official, may be removed from office, before the end of his term of office, by a vote of the people to be taken on the filing of a petition signed by the required number of qualified voters (commonly 25%)." Webster's New International Dictionary (2d ed), p 2075.

Thus, recall is not the equivalent of a new election. A recall election must involve the course of conduct of an official subsequent to his entering upon his elected term of office. And the petitions for such an election must clearly state the reasons from such a course of conduct which give rise to the recall demand.

But we cannot find justification for implying that such reasons must be facts constituting nonfeasance, misfeasance, or malfeasance, or misconduct. It is significant that words of this import are found in the constitutional provisions relating to impeachment or removal of State officers (see Const 1908, art 9, §§ 1, 7), but not in the recall provision (Const 1908, art 3, § 8).

In the leading case in this country, the principle of recall is stated thus:

"We understand that the principle underlying the recall of public officers means that the people may have an effective and speedy remedy to remove an official who is not giving satisfaction—one who they do not want to continue in office, regardless of whether or not he is discharging his full duty to the best of his ability and as his conscience dictates. If the policies pursued do not meet the approval of a majority of the people, it is the underlying principle of the recall doctrine to permit them to expeditiously recall the official, without form or ceremony, except as provided for in the charter." *Dunham* v. *Ardery,*

43 Okla 619, 625, 626 (143 P 331, LRA 1915B, 232, Ann Cas 1916A, 1148).

Much of what has been said to justify a limit upon recall clearly not provided or contemplated by the Constitution has revealed fears about an irresponsible electorate which have persisted since the founding of this nation. A much cited Nebraska case pertaining to a Nebraska recall statute provides some answers which are equally applicable to the Michigan constitutional right of recall:

"It has been argued that absurd reasons may be stated in the petition, and that an officer may be called upon to defend his position against frivolous attacks. Doubtless the provision requiring 30% of the electors to sign the petition before the council are compelled to act was designed to avoid such a contingency. The legislature apparently assumed that nearly 1/3 of the electorate would not entail upon the taxpayers the cost of an election, unless the charges made approved themselves to their understanding and they were seriously dissatisfied with the services of the incumbent of the office.

"The idea of removing public officers at the discretion of the appointing power, as we have seen, is not a novel one. The concept that this may be done at the direct instance and upon the motion of the electors, the ultimate source of power in a republic, only carries back the power of removal one step farther. If it is not obnoxious to the constitution to allow an elected officer to remove an appointed one, how can it be a violation of that law to allow it to be done by the people themselves? They are no doubt better qualified to determine the capability and efficiency of their administrative agent after giving him an opportunity to perform the duties of the office than they were when they first selected him to fill the position. The officer takes the position for a fixed term, with the condition attached that he is subject to removal whenever his services are not desired by

the number of his fellow citizens named in the statute. The policy of the recall may be wise or it may be vicious in its results. We express no opinion as to its wisdom with respect to the removal of administrative officers. If the people of the State find, after a trial of the experiment, that the provisions of the statute lead to capable officials being vexed with petitions for their recall, based upon mere insinuations or upon frivolous grounds, or because they are performing their duty and enforcing the law, as they are bound to do by their oath of office, or lead without good and sufficient reason to frequent, costly, and unnecessary elections, they have the power through their legislature to amend the statute so as to protect honest and courageous officials." *State, ex rel. Topping,* v. *Houston,* 94 Neb 445, 455, 456 (143 NW 796, 50 LRA NS 227).

The general rule appears to be that absent specific constitutional or statutory requirements, the sufficiency of reasons in a recall petition is for the determination of the electorate rather than the courts. *State, ex rel. Topping,* v. *Houston, supra; Laam* v. *McLaren,* 28 Cal App 632 (153 P 985); *Conn* v. *City Council of Richmond,* 17 Cal App 705 (121 P 714).

See, also, 106 ALR 555, 564; 28 Am Jur, Initiative, Referendum and Recall, § 51 *et seq.*

Michigan's Constitution and statute require a clear statement of reasons for recall based upon an act or acts in the course of conduct in office of the officer whose recall is sought. Beyond this, the Constitution reserves the power of recall to the people.

The basic power is held by the people in both our nation and our State. Our State Constitution as presently drawn places much confidence in the proper functioning of an intelligent and informed electorate. The recall provision is illustrative of that confidence. We feel bound to uphold its provisions against the aberration contained in the *Newberg Case* and subsequently followed in the cases cited.

The question of legislative acceptance of this Court's previous interpretation of the recall statute is, of course, irrelevant when we are construing the Constitution itself.

The circuit judge was right in refusing the writ of mandamus prayed for.

Affirmed. No costs, a public question being involved.

DETHMERS, C. J., and CARR, and SMITH, JJ., concurred with EDWARDS, J.

BLACK, J. (*dissenting*). When an appellate court having authority so to do interprets and applies an abstruse statute, the interstices of ambiguity and uncertainty are necessarily filled by the judicial branch. Thus the statute is rewritten in part by the Court, and so judges do legislate in a most definite sense.* It is necessary that courts do this. Why? Let's face the answer with candor and without pretense. Is it not that the doubtful and not too thoroughly spelled statute makes no law until the meaning thereof has been fixed?†

---

* "Here, indeed, is the point of contact between the legislator's work and his [that of the judge]. The choice of methods, the appraisement of values, must in the end be guided by like considerations for the one as for the other. Each indeed is legislating within the limits of his competence. No doubt the limits for the judge are narrower. He legislates only between gaps. He fills the open spaces in the law." Cardozo, Nature of the Judicial Process; Lecture 3, "The Judge as a Legislator," pp 113, 114.

† "Were a legislature to try always to tie down the courts by overprecise words, it would often defeat itself. Consequently, the legislature, not infrequently, uses words that are purposely vague, intending that the courts should work out the meaning as specific cases arise.

"Legislative legislation thus often calls for interpretation which compels judicial legislation necessary to carry out the legislature's purpose. That explains the following statement by Gray to which some lawyers object: 'It has sometimes been said that the law is composed of 2 parts—legislative law and judge-made law, but in truth all the law is judge-made law. The shape in which a statute is imposed on the community as a guide for conduct is that statute as interpreted by the courts. The courts put life into the dead words of the statute.' " Jerome Frank, Courts on Trial (Princeton Univ. Press, 1950), p 294.

Back in the 1920's this Court, manned then by a memorably able crew of industrious judges, interpreted the broadly worded statute before us as requiring that petitions for recall "state facts which, if true, would show nonfeasance, misfeasance or malfeasance in office." (*Newberg* v. *Donnelly,* 235 Mich 531; *People, ex rel. Elliot,* v. *O'Hara,* 246 Mich 312.) By force of *Newberg* and *O'Hara* the statute reads—today—that way. It has governed, well it would seem since 1926, the legal circumstances under which recall elections have been permitted and conducted. Now it is resolved—in the favorite parlance of a Brother seated here—that this Court pry at the crevices of this statute by overruling *Newberg* and *O'Hara* to permit any fuzzy or petty charge—say wearing orange on St. Patrick's Day—as an assigned basis for recall of an elective nonjudicial officer. Standing by and on the worthy integrity of the 2 cited cases, I oppose the resolution.

There was good reason for the drawing in *Newberg* and *O'Hara* of an interpretive line between whimsey and due allegation of legal substance. Without such line and its reason, new elections might constantly be held, and disgruntled minorities might at will so harass elected officials as to cripple if not actually frustrate due functioning by them. And, while it was found unnecessary to say so in *O'Hara,* I apprehend that the legislature enacted this statute with confidence that our Court—if called upon to decide—would interpret the statute in such manner as to guarantee elected public officials some minimal semblance of due process as a condition of recall, that is to say, that we look upon the statute as providing in favor of such officers the right to be charged, before being called upon to defend, with some act which offends the law and not the spleen of a petitioning minority.

I see no reason for departure from the wisdom of *Newberg* and *O'Hara,* or for adoption of views some other States have taken of variant statutes and constitutional provisions,* and therefore concur with Mr. Justice KELLY's determination that these petitions are legally insufficient under the statute.

KAVANAGH, J., concurred with BLACK, J.

SOURIS, J., took no part in the decision of this case.

---

* Billed as "the leading case in this country" is *Dunham* v. *Ardery,* 43 Okla 619 (143 P 331, LRA 1915B, 232, Ann Cas 1916A, 1148). There it was contended that the officer (mayor) sought to be removed by procedure of a city charter could only be removed in the manner provided by certain constitutional provisions. The charter provision was held valid as against the stated challenge. I find no similarity of any Michigan statute or constitutional provision with the local and constitutional provisions which, in *Dunham,* the court considered. And I find no evidence abroad that *Dunham* is regarded as a ruling or memorable case.