No. 26505

George G. Bernzen, Amy Brown, Diane Schechter, and All Other Persons Similarly Situated v. The City of Boulder, a municipal corporation organized under and by virtue of the laws of the State of Colorado; Penfield W. Tate, II, Timothy Fuller, Ruth Correll, Janet Roberts, Karen Paget, Kenneth Wright, Walter Slack, Frank Buchanan, Robert Trenka, constituting the duly elected and acting Council of the City of Boulder; Carl Chapel, City Clerk v. Chester V. Wells, Zenon J. Raczkowski and B. J. Perrin

(525 P.2d 416)

Decided August 12, 1974.

Duncan A. Campbell, Paul Snyder, Jr., for plaintiffs-appellees.

Christopher R. Brauchli, for defendants-appellants Tate and Fuller, on the issue of succession only.

Walter L. Wagenhals, City Attorney, Ronald B. Porter, Deputy, for defendants-appellants City of Boulder, Colorado, and Carl Chapel, City Clerk.

Dosh, DeMoulin, Anderson and Campbell, Edward H. Haffey, for intervenors-appellants.

Jeremy Shamos, for amici curiae The Center for Law and Research and American Civil Liberties Union of Colorado.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This appeal challenges the judgment of the Boulder County District Court which permanently enjoined an election for the recall of two city councilmen, Penfield Tate and Timothy Fuller, because of the insufficiency of the petitions for recall certified by the City Clerk of Boulder on May 2, 1974. The judgment also held, in the event an election were to be held, that both councilmen could run as candidates to succeed themselves in the same election in the event they were recalled.

Thus, two issues arise out of the controversy: 1. Whether

the petitions for recall are sufficient under the Boulder Charter and the constitution of the State of Colorado to require the holding of a recall election; and 2. In the event an election is held, whether Tate's and Fuller's names should be allowed on the ballot as candidates for election and be permitted to succeed themselves in the event they (or either of them) should be recalled. We answer the first question in the affirmative and the second question in the negative.

The plaintiff Bernzen is a duly registered voter in the city of Boulder and is a member of a class of persons who voted for the election of Councilmen Tate and Fuller in the November, 1971, municipal election.

The plaintiffs Brown and Schechter are also registered electors of the city of Boulder and are students at the University of Colorado, who alleged that they planned to be gone from Boulder for the proposed recall election. They claimed to be members of a large class of persons similarly situated. Because of the delay resulting from this appeal, the issue raised by Brown and Schechter appears to have become moot insofar as the present recall election is concerned. It should also be noted that the trial court found that the evidence failed to sustain the class allegedly represented by Brown and Schechter and the court's judgment did not consider the issues they raised involving student voters.

The defendants Correll, Roberts, Paget, Wright, Slack, Buchanan and Trenka, at all times pertinent to the litigation, were duly elected city council members, serving with Tate and Fuller, and were responsible for implementing the charter provisions in reference to the recall. Additionally, Chester V. Wells, Zenon J. Raczkowski, and B. J. Perrin appear here as intervenors-appellants and argue that the petitions are sufficient and that the recall election be held forthwith.

The action was filed on May 3, 1974, the day after the city clerk certified to the city council that the two petitions for recall met the charter requirements in all respects. Boulder is a home rule city under Colo. Const. Art. XX, Sec. 6. The Boulder Charter requires, if the councilman for whose recall

the petition is filed does not resign within five days of the clerk's certificate, that a recall election be set for a date not less than 30 nor more than 40 days from the date on the clerk's certificate. At its meeting to be held May 7, 1974, the council had scheduled for consideration a proposed ordinance providing that the recall election be held on June 11, 1974. However, on May 7, 1974, the district court entered a temporary restraining order enjoining the city and its agents from taking any steps toward setting a date for the recall election. The temporary order was extended and was in force up until the entry of the judgment which is under consideration here.

## I.

The first issue — the sufficiency of the petitions — involves the applicability to home rule cities of the limitation on judicial review contained in Article XXI, Sections 1 and 2 of the Colorado Constitution relating to recall from office. Section 1 provides that:

". . . such petition shall contain a general statement, in not more than two hundred words, of the ground or grounds on which such recall is sought, which statement is intended for the information of the electors, and *the electors shall be the sole and exclusive judges of the legality, reasonableness and sufficiency of such ground or grounds assigned for such recall, and said ground or grounds shall not be open to review.*" (Emphasis added.)

Section 2 amplifies the limitation on judicial review:

"The finding as to the sufficiency of any petition may be reviewed by any state court of general jurisdiction in the county in which such petition is filed, . . . *The sufficiency, or the determination of the sufficiency, of the petition referred to in this section shall not be held, or construed, to refer to the ground or grounds assigned in such petition for the recall* of the incumbent sought to be recalled from office thereby." (Emphasis added.)

Section 56 of the Boulder City Charter provides that a petition for recall shall contain "a substantial statement of grounds upon which the removal is sought." However, the

charter is silent as to whether one may obtain judicial review of the sufficiency of the grounds set out in the petition.

The limitation on judicial review of the grounds for recall set out above makes it clear that the recall intended by the framers of the Colorado Constitution is purely political in nature. As the Oklahoma Supreme Court said in *Dunham v. Ardery,* 43 Okla. 619, 143 P. 331 (1914):

"We understand that the principle underlying the recall of public officers means that the people may have an effective and speedy remedy to remove an official who is not giving satisfaction — one who they do not want to continue in office, regardless of whether or not he is discharging his full duty to the best of his ability and as his conscience dictates. If the policies pursued do not meet the approval of a majority of the people, it is the underlying principle of the recall doctrine to permit them to expeditiously recall the official, without form or ceremony, except as provided for in the charter." 143 P. 331, 333.

Thus, Colorado is not a state in which official misconduct is necessarily required as a ground for recall. Rather, the dissatisfaction, whatever the reason, of the electorate is sufficient to set the recall procedures in motion. *See Batchelor v. Eighth Judicial District Court,* 81 Nev. 629, 408 P.2d 239 (1965); *Wallace v. Tripp,* 358 Mich. 668, 101 N.W.2d 312 (1960); *State ex rel. Topping v. Houston,* 94 Neb. 445, 143 N.W. 796 (1913); *but see Taines v. Galvin,* 279 So.2d 9 (Fla. 1973); *Richard v. Tomlinson,* 49 So.2d 798 (Fla. 1951). The framers, by requiring that a recall petition contain the signatures of at least 25% of all votes cast in the last election for *all* candidates for the position which the person sought to be recalled occupies, assured that a recall election will not be held in response to the wishes of a small and unrepresentative minority. However, once at least 25% of the electorate have expressed their dissatisfaction, the constitution reserves the recall power to the will of the electorate. Courts of law are not to intercede into the reasons expressed by the majority.

Our disagreement with the trial court stems from a basic difference in concept and interpretation of the constitu-

tional provisions relating to recall. We view recall, as well as the initiative and referendum, as fundamental rights of a republican form of government which the people have reserved unto themselves. As stated in *Brooks v. Zabka,* 168 Colo. 265, 450 P.2d 653 (1969) at 268:

"Such a reservation of power in the people must be liberally construed in favor of the right of the people to exercise it. Conversely, limitations on the power of referendum must be strictly construed."

*See Burks v. City of Lafayette,* 142 Colo. 61, 349 P.2d 692 (1960); *Brownlow v. Wunsch,* 103 Colo. 120, 83 P.2d 775 (1938). We have also held that where the constitution protects certain fundamental values, neither the legislature nor a home rule city has the power to act to infringe upon such values. *Burks v. City of Lafayette, supra; In re Kindergarten Schools,* 18 Colo. 234, 32 P. 422 (1893).

We are not unaware that Article XXI, Section 4 of the Colorado Constitution delegates the recall power to the subordinate levels of state government.[1] However, in view of the fundamental nature of the recall power and our reading of the applicable paragraphs of Section 4, this delegation of power must be limited to procedural matters and substantive provisions not in conflict with the state constitution. Section 4 in pertinent part provides:

"The recall may also be exercised by the electors of each . . . city and town of the state, with reference to the elective officers thereof, *under such procedure as shall be provided by law.*

"Until otherwise provided by law, *the legislative body of any such county, city and county, city and town may provide for the manner of exercising such recall powers* in such counties, cities and counties, cities and towns, *but shall not require any such recall to be signed by electors more in number than twenty-five per centum of the entire vote cast at the last preceding election, as in section 1 hereof more particularly*

---

[1] We have previously held that the subordinate levels of state government must enact enabling procedural legislation before their officials are subject to recall. *See Guyer v. Stutt,* 68 Colo. 422, 191 P. 120 (1920); *Hall v. Cummings,* 73 Colo. 74, 213 P. 328 (1923).

*set forth,* for all the candidates for office which the incumbent sought to be recalled occupies, as hereinabove defined.

"Every person having authority to exercise or exercising any public or governmental duty, power or function, shall be an elective officer, or one appointed, drawn or designated in accordance with law by an elective officer or officers, or by some board, commission, person or persons legally appointed by an elective officer or officers, *each of which said elective officers shall be subject to the recall provision of this constitution; . . .*

. . . .

"This article is self-executing, but legislation may be enacted to facilitate its operations, *but in no way limiting or restricting the provisions of this article, or the powers herein reserved.*" (Emphasis added.)

Thus, we must look to the substantive provisions of Article XXI of the Colorado Constitution to resolve the important questions presented by this case.

First, as to the sufficiency of the statement of the grounds for recall, the trial court erred in holding that the following statement was not sufficient:

"Councilman [Fuller's and Tate's names mentioned respectively] does not properly reflect the wishes of the majority of the citizenry of the city of Boulder, he is unresponsive to those wishes and therefore, does not represent his constituency."

As set out above, Article XXI of the Colorado Constitution reserved the power of recall to the people. The recall power reserved was political in nature, and the constitution provides that "the electors shall be the sole and exclusive judges of the legality, reasonableness and sufficiency of such ground or grounds assigned for such recall . . . ." The trial court's inquiry into the sufficiency of the statement of the grounds for recall clearly infringes upon the powers reserved by the people and was error. To avoid any conflict between the Boulder Charter and the constitution, we hold that the limitation on judicial review of the grounds for recall found

in the constitution is incorporated by implication in the Boulder Charter.

## II.

 Similarly, as to whether Fuller and Tate may be candidates to succeed themselves in the event that they are recalled, we hold that the substantive provisions of the state constitution must control. Article XXI, Section 3 provides in pertinent part:

". . . The name of the person against whom the petition is filed shall not appear on the ballot as a candidate for the office."

We view this as a substantive element of the recall process. To allow one who has been recalled to run in an election to succeed himself, where it would be possible to be elected by a plurality of the vote cast, would frustrate the will of the majority who had successfully invoked the recall election. *See Recall Bennett Committee v. Bennett,* 196 Ore. 299, 249 P.2d 479 (1952). Home rule cities may provide for an election system in which candidates may be elected by a plurality vote. They may not, however, make it possible to frustrate the will of the majority by allowing a recalled officer to succeed himself.

The judgment of the trial court is reversed, and the cause is remanded with directions for the city council to schedule the recall election in accordance with the provisions of the Boulder City Charter.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY concur in result only as to Part I and dissent as to Part II.

MR. JUSTICE GROVES does not participate.

MR. CHIEF JUSTICE PRINGLE concurring in the result of Part I of the opinion and dissenting on Part 2 of the opinion:

I concur in the result of Part 1 of this opinion and would order the election held because it is my view that the Boulder Charter and the Constitution of the State of Colorado, with respect to the issues raised on this point, in no way conflict with each other.

As the majority notes, the recall power reserved in Article XXI of the Colorado Constitution is political in nature and the Constitution provides that ". . . the electors shall be the sole and exclusive judges of the legality, reasonableness and sufficiency of such ground or grounds assigned for such recall . . . ." In my view, the Boulder Charter provision that the recall petition contain a "substantial statement of the grounds" also permits recall for purely political reasons. It requires only that those reasons be substantially set forth in the petition. The courts are therefore precluded from reviewing the grounds. Since, in my view, there is no conflict between the Colorado Constitution and the Boulder Charter, there is no need to make the constitutional determinations which the majority opinion does.

Insofar as the majority opinion forbids the present incumbents from having their names placed on the ballot to succeed themselves in the event they are recalled, I respectfully dissent. It is clear that the framers of the Boulder Charter followed the provisions of the Colorado Constitution dealing with recall word for word until they came to that portion of Section 3, Article XXI, which provides: ". . . The name of the person against whom the petition is filed shall not appear on the ballot as a candidate for the office."

They deliberately excluded that phrase in their recall provisions. Later in the Charter when they were dealing with the question of what should happen to one who was recalled from office, they provided only that he may not be "appointed" to any office within one year of his removal.

It is clear to me that the framers of the Boulder Charter specifically meant to permit the incumbent to run for election to succeed himself. Where there is a difference between the provisions of Article XXI and the provisions of a home rule city charter, those provisions govern which reserve the greater or more extensive electoral power for the people. I see no conflict with the Colorado Constitution in this particular, since I do not view this as a restriction of any right granted by the Colorado Constitution.

To me, this approach on the part of the drafters of the Boulder Charter is consonant with a freer expression of the popular will, provides less restriction on voter power than is provided in the Colorado Constitution and, therefore, is permissible in a home rule city charter.

I think the opinion of Chief Justice Weintraub in *Grubb v. Wyckoff*, 52 N.J. 599, 247 A.2d 481 (1968) and the reasoning therein contained is cogent and I would adopt it here.

MR. JUSTICE DAY authorizes me to say that he joins in these views.